# COMPOSITE EXHIBIT B

## FORM 1.997. CIVIL COVER SHEET

The civil cover sheet and the information contained in it neither replace nor supplement the filing and service of pleadings or other documents as required by law. This form must be filed by the plaintiff or petitioner with the Clerk of Court for the purpose of reporting uniform data pursuant to section 25.075, Florida Statutes. (See instructions for completion.)

### I. CASE STYLE

IN THE CIRCUIT COURT OF THE <u>SEVENTEENTH</u> JUDICIAL CIRCUIT,
IN AND FOR <u>BROWARD</u> COUNTY, FLORIDA

<u>Vanguard Plastic Surgery, PLLC</u>
Plaintiff

Case # _____
Judge _____

vs.
<u>UnitedHealth Group Incorporated, United Healthcare Services, Inc.</u>
Defendant

### II. AMOUNT OF CLAIM

Please indicate the estimated amount of the claim, rounded to the nearest dollar. The estimated amount of the claim is requested for data collection and clerical processing purposes only. The amount of the claim shall not be used for any other purpose.

☐ $8,000 or less
☐ $8,001 - $30,000
☐ $30,001- $50,000
☐ $50,001- $75,000
☐ $75,001 - $100,000
☒ over $100,000.00

### III. TYPE OF CASE
(If the case fits more than one type of case, select the most definitive category.) If the most descriptive label is a subcategory (is indented under a broader category), place an x on both the main category and subcategory lines.

- 1 -

Case 1:23-cv-16083-AHS Document 1-2 Entered on FLSD Docket 01/05/2021 Page 3 of 44
Case Number: CACE-20-020299 Division: 05

IN THE CIRCUIT COURT OF THE 17TH
JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

CASE NO.:

VANGUARD PLASTIC SURGERY, PLLC d/b/a
VANGUARD AESTHETIC AND PLASTIC
SURGERY,

       Plaintiff,

vs.

UNITEDHEALTH GROUP INCORPORATED, a
foreign corporation, and UNITED HEALTHCARE
SERVICES, INC., a foreign corporation,

       Defendants.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

    Plaintiff Vanguard Plastic Surgery, PLLC d/b/a Vanguard Aesthetic & Plastic Surgery

("Plaintiff"), a Florida corporation, sues Defendants UnitedHealth Group Incorporated, a foreign

corporation ("UHG") and United HealthCare Services, Inc., a foreign corporation (individually,

"UHC Services," and together with UHG, "Defendants"), and alleges as follows:

    1.    This action concerns the unreasonably low rate at which Defendants reimbursed

Plaintiff for medical services Plaintiff provided to a patient, B.H.S. ("Patient"), covered under a

health insurance plan insured, operated, and/or administered by Defendants.

    2.    Plaintiff provided medically necessary services to Patient consisting of five

different complex surgical procedures relating to Patient's diagnosis with Lynch Syndrome and

associated increased risk of breast cancer. These surgical procedures included a double

mastectomy, multiple stages of reconstruction, and other procedures necessary to treat infections

[9000.002/5252559/1]

*** FILED: BROWARD COUNTY, FL BRENDA D. FORMAN, CLERK 12/03/2020 03:38:41 PM.****

and other physical complications from which Patient was suffering as a result of the double mastectomy.

3.     Three of the surgeries at issue were preauthorized by Defendants. The other two surgeries were performed on an emergency basis.

4.     Plaintiff performed all five surgeries with the understanding and expectation that Defendants would reimburse Plaintiff for the services it provided to Patient at rates equal to either the shared savings rates required by applicable agreements, or the fair market or reasonable value of Plaintiff's services. Plaintiff's understanding and expectation in this regard was based upon Defendants' preauthorization of the services, Defendants' representations on the member ID card they issued to Patient, Defendants' representations on the remittance documents it sent to Plaintiff, the course of dealing and course of performance between Defendants and Plaintiff, and the requirements of Florida law.

5.     Instead, Defendants wrongfully have paid Plaintiff at rates below: (1) the shared savings rates recognized and promised by Defendants for services provided to Patient; (2) the "usual and customary provider charges" in violation of Sections 627.64194(4) and 641.513(5), Florida Statutes, for claims subject to those sections; and/or (3) the reasonable value of the services in the marketplace required under *quantum meruit* by the implied-in-fact contract and/or the implied-in-law contract between the parties, for claims not subject to Sections 627.64194(4) and 641.513(5).

6.     Florida has a strong public policy of protecting both patients who receive medical services in Florida and physicians who provide medical services in Florida.

7.     Sections 627.64194(4) and 641.513(5) further Florida's public policy by protecting members of managed care organizations from being balance billed for services subject

to these statutes, and by protecting non-participating providers who provide services subject to these statutes from being unfairly or inadequately compensated for services they are legally required to perform.

8.      Under Sections 627.64194(4) and 641.513(5), Defendants are obligated to pay Plaintiff, on claims subject to those sections, the lesser of Plaintiff's billed charges and the "usual and customary provider charges for similar services in the community where the services were provided"; i.e., the fair market value of the services, as interpreted by Florida courts.

9.      For claims not subject to Sections 627.64194(4) and 641.513(5), Defendants are obligated to pay Plaintiff under their implied contracts and the doctrine of *quantum meruit* the lesser of Plaintiff's billed charges or, if different, the reasonable value of the services Plaintiff's physicians rendered to Defendants' members. Alternatively, Defendants are obligated to pay Plaintiff the shared savings rates for Plaintiff's services, as promised by Defendants.

10.     Defendants already have adjudicated these claims and determined that all of the claims at issue in this action were for covered services rendered to Patient, and Defendants already have paid all of the claims at issue, albeit at amounts representing a mere fraction of the applicable shared savings rates for the services, the "usual and customary provider charges" for the services, and/or the reasonable value of the services. Thus, this action concerns only the *rate of* payment and not the *right to* payment. This action does not include any claims in which benefits were denied, nor does it challenge any coverage determinations under ERISA.

11.     In this action, Plaintiff is seeking to have Defendants comply with their obligation to pay Plaintiff the shared savings rates which Defendants affirmatively accessed and assented to pay, as confirmed on the remittance notices Defendants issued to Plaintiff, or alternatively, at rates that represent the "usual and customary provider charges" required by Sections

Shapiro, Blasi, Wasserman & Hermann, P.A.
Attorneys for Plaintiff

627.64194(4) and 641.513(5), or the reasonable value of Plaintiff's services in the marketplace required under *quantum meruit* based on their implied-in-fact and/or implied-in-law contracts.

12.     For the claims at issue in this action, the conduct and relationship of Plaintiff and Defendants and the surrounding circumstances created an enforceable contract pursuant to which Defendants agreed to pay Plaintiff the shared savings rates required by applicable agreements. Further, Plaintiff did not agree to accept discounted rates from Defendants for its services, other than the applicable shared savings rates, and did not agree to be bound by the terms of Patient's plan or by Defendants' reimbursement policies or rate schedules. Nevertheless, Defendants have not paid Plaintiff the shared savings rates Defendants affirmatively accessed and assented to pay for services provided to Patient, nor have Defendants paid Plaintiff the fair market or reasonable value of its services.

13.     The impact of Defendants' underpayments on the claims at issue is considerable and has left a balance due from Defendants exceeding the minimum jurisdictional limits of this Court.

## Parties

14.     Plaintiff is a Florida professional limited liability company with its principal place of business located in Broward County, Florida.

15.     Defendant UHG is a foreign corporation with its principal address located at 9900 Bren Road East Minnetonka, Minnesota. UHG provides benefits and services outside of Minnesota, including in Broward County, Florida.

16.     Defendant UHC Services is a foreign corporation with its principal address located at 9900 Bren Road East, Minnetonka, Minnesota. UHC Services is a wholly owned subsidiary of

UHG. UHC Services provides benefits and services outside of Minnesota, including in Broward County, Florida.

## Jurisdiction and Venue

17. The amount in controversy exceeds the sum of $30,000, exclusive of interest, costs, and attorneys' fees.

18. UHG operates, conducts, engages in, and carries on business in Florida and has offices and agencies throughout Florida.

19. UHC Services operates, conducts, engages in, and carries on business in Florida and has offices and agencies throughout Florida.

20. Venue is proper in Broward County, Florida, because the Plaintiff provided the medical services to Patient in Broward County and because the payments to Plaintiff for those services were due in Broward County.

## Facts

21. Plaintiff, through its physicians, provides medical services, including emergency services and care, reconstructive surgical services, and other surgical services, to patients in Broward County, Florida, including at Plantation General Hospital and ambulatory surgical centers.

22. Plaintiff's physicians are licensed medical doctors practicing in the state of Florida.

23. Plaintiff is obligated by both Florida and federal law to examine any individual presenting to the emergency department and to provide treatment to any individual with an emergency medical condition, regardless of the individual's insurance coverage or ability to pay.

24. Upon information and belief, at all material times, Patient is and was a resident of Broward County, Florida.

25.    Prior to Plaintiff providing any of the services at issue, Patient was diagnosed with Lynch syndrome, which is associated with an increased incidence of breast cancer. Patient was evaluated and recommended for bilateral prophylactic mastectomies. Accordingly, Patient sought treatment with Plaintiff, including bilateral prophylactic mastectomies and associated reconstruction.

### The Plan

26.    Defendants provide coverage for healthcare services provided to their members in the state of Florida.

27.    At all material times, Patient was a member of a health benefit plan sponsored by UHG, which plan provided coverage for services provided in Florida (the "Plan").

28.    Upon information and belief, at all material times, UHG was the plan administrator and sponsor of the Plan. As the sponsor of the Plan, UHG provides funding for payments made on claims for services covered by the Plan.

29.    At all material times, UHC Services was the third-party administrator and/or claims administrator of the Plan responsible for administering and/or paying claims for services covered by the Plan and provided to Patient.

30.    Upon information and belief, at all material times, UHG delegated to its affiliate, UHC Services, the responsibility for adjudicating claims for services covered by the Plan and provided to Patient.

31.    At all material times, UHC Services was a "significant subsidiary" of UHG.[1] Accordingly, UHC Services has a significant financial interest in minimizing the payments made

---

1.    *See, e.g.*, UnitedHealth Group Incorporated, Annual Report (Form 10-K) at Ex. 21.1 (Feb. 14, 2020), *available at* https://www.sec.gov/Archives/edgar/data/0000731766/000073176620000006/unhex21112312019.htm.

on claims for services covered by the Plan, as this maximizes the profit to its parent company, UHG.

<u>*The Three Rivers Provider Network Agreement*</u>

32.     At all material times, Plaintiff was a provider in shared savings networks,[2] including the Three Rivers Provider Network ("TRPN").

33.     Shared savings networks (like TRPN) provide payers (like Defendants) the right to access out-of-network providers (like Plaintiff) at a negotiated, discounted rate of reimbursement for services provided to insureds (like Patient) while maximizing the insureds' benefits by eliminating the out-of-network providers' right to balance bill the insureds.

34.     Patient's member ID card, issued by Defendants, indicates that Defendants recognize such shared savings networks for services provided to Patient.

35.     Upon information and belief, at all material times, Defendants contracted with TRPN for access to TRPN's shared savings rates negotiated with providers like Plaintiff.

36.     Plaintiff's agreement with TRPN provides for a shared savings rate equal to a seven percent (7%) discount off Plaintiff's billed charges for services, less any patient responsibility amounts.

37.     Pursuant to its agreement with TRPN, Plaintiff is prohibited from balance billing patients upon receipt from payers, like Defendants, of payment in full at the shared savings rate.

<u>*March 2018 Surgeries (First & Second)*</u>

38.     On or about March 5, 2018, Patient presented to The Surgery Center of Fort Lauderdale for pre-authorized bilateral mastectomies with immediate implant reconstruction.

---

2.     These "networks" are also referred to as "rental networks," "medical discount networks," "repricing companies," and various other names. However, because Defendants appear to use the phrase "shared savings program," that same terminology is used throughout this Complaint.

[9000.002/5252559/1]

39.     UHG and/or UHC Services issued prior authorization for the March 5th, 2018 services under prior authorization number A03949641.

40.     On or about March 5, 2018, Plaintiff, through its physicians, provided medical services to Patient at The Surgery Center of Fort Lauderdale, which services consisted of bilateral prophylactic mastectomies with reconstruction that were covered benefits under Patient's Plan ("First Surgery").

41.     On or about March 10, 2018, after the First Surgery, Patient presented to the emergency department at Plantation General Hospital with significant bilateral bruising and swelling of the breasts secondary to hematomas and necrosis of the areola, which conditions manifested themselves by acute symptoms of sufficient severity such that the absence of immediate medical attention could reasonably have been expected to result in serious jeopardy to Patient's health, serious impairment to Patient's bodily functions, and/or serious dysfunction of Patient's bodily organ(s) or part(s).

42.     On or about March 10, 2018, Plaintiff, through its physicians, provided medical services at Plantation General Hospital to Patient, which services consisted of a complex surgery that was necessary to relieve or eliminate the medical conditions for which Patient sought treatment at Plantation General Hospital ("Second Surgery").

### January 2019 Surgery (Third)

43.     Subsequent to the First and Second Surgeries, Patient suffered from infections and capsular contractures.

44.     On or about January 26, 2019, Patient presented to the emergency department at Plantation General Hospital due to an infection of her left breast implant, exposed left implant with dehiscence of the wound, and associated medical conditions, which conditions manifested

themselves by acute symptoms of sufficient severity such that the absence of immediate medical attention could reasonably have been expected to result in serious jeopardy to Patient's health, serious impairment to Patient's bodily functions, and/or serious dysfunction of Patient's bodily organ(s) or part(s).

45.    On or about January 26, 2019, Plaintiff, through its physicians, provided medical services at Plantation General Hospital to Patient, which services consisted of a complex surgery, including removal of the left breast implant and total capsulectomy, that was necessary to relieve or eliminate the medical conditions for which Patient sought treatment at Plantation General Hospital ("Third Surgery").

### *April 2019 Surgery (Fourth)*

46.    On or about April 11, 2019, Patient presented to Plantation General Hospital for pre-authorized reconstructive surgery.

47.    UHG and/or UHC Services issued prior authorization for the April 11th, 2019 services under prior authorization number A069126227.

48.    On or about April 11, 2019, Plaintiff, through its physicians, provided medical services to Patient, which services consisted of a complex surgery, including total capsulectomy with a large amount of scar tissue and first stage of reconstruction using a tissue expander ("Fourth Surgery").

### *August 2019 Surgery (Fifth)*

49.    On or about August 29, 2019, Patient presented to Plantation General Hospital for pre-authorized reconstructive surgery.

50.    UHG and/or UHC Services issued prior authorization for the August 29th, 2019 services under prior authorization number A07825237013102

51.     On or about August 29, 2019, Plaintiff, through its physicians, provided medical services to Patient, which services consisted of a complex surgery, including capsulectomy, removal of tissue expander, and placement of permanent implant (individually, "Fifth Surgery," and together with the First, Second, Third, and Fourth Surgeries, the "Surgeries").

### *Defendants' Underpayment of the Claims*

52.     Plaintiff submitted claims for reimbursement for the services Plaintiff provided to Patient as part of the Surgeries (collectively, the "Claims").

53.     Plaintiff submitted the Claims to UHC Services as the designated claims administrator responsible for adjudicating the Claims on behalf of UHG.

54.     Plaintiff's charges for the services it provided as part of the First Surgery totaled $114,252.00. UHC Services paid $4,378.77 to Plaintiff for those services.

55.     Plaintiff's charges for the services it provided as part of the Second Surgery totaled $105,513.00. UHC Services paid $4,257.54 to Plaintiff for those services.

56.     Plaintiff's charges for the services it provided as part of the Third Surgery totaled $32,121.00. UHC Services paid $5,235.41 to Plaintiff for those services.

57.     Plaintiff's charges for the services it provided as part of the Fourth Surgery totaled $136,761.00. UHC Services paid $3,172.44 to Plaintiff for those services.

58.     Plaintiff's charges for the services it provided as part of the Fifth Surgery totaled $53,546.00. UHC Services paid $4,927.50 to Plaintiff for those services.

59.     UHC Services made the foregoing payments to Plaintiff in Fort Lauderdale, Florida.

60.     Plaintiff did not and does not have applicable participation agreements with Defendants, and thus the Claims are considered non-participating or out-of-network claims.

61.    However, at all material times, Plaintiff was a provider in the TRPN shared savings network. Defendants affirmatively accessed the TRPN shared savings network, and assented to pay the TRPN shared savings rate, for the services Plaintiff provided to Patient.

62.    Defendants have at all material times approved Plaintiff's rendering of the medical services underlying the Claims to Patient.

63.    The Claims have already been adjudicated by UHC Services and determined to be for covered services. Thus, this dispute concerns a rate of payment, and not a right to payment.

64.    Defendants are aware that Plaintiff provided medical services to Patient with the expectation and understanding that its services had been approved by Defendants and that Plaintiff would be reimbursed by Defendants at rates reflecting: (a) the TRPN shared savings rates applicable to services provided to Patient; (b) the lesser of (i) Plaintiff's billed charges or (ii) the "usual and customary provider charges for similar services" (i.e., fair market value), as provided by Sections 627.64194(4) and 641.513(5), for claims subject to those sections; and/ or (c) the reasonable value in the marketplace, or *quantum meruit,* of the medical services Plaintiff provided, for claims not subject to Sections 627.64194(4) and 641.513(5).

65.    Plaintiff has billed Defendants their usual and customary billed charges for the medical services its physicians provided to Patient with the understanding that Defendants had agreed to pay Plaintiff: (a) the applicable TRPN shared savings rates; (b) the lesser of Plaintiff's billed charges or fair market value for claims subject to Sections 627.64194(4) and 641.513(5); and/or (c) the reasonable value of their services in the marketplace for claims not subject to those sections.

66.     Defendants in fact paid Plaintiff for the medical services it provided to Patient, albeit at amounts inappropriately below Plaintiff's billed charges, the applicable TRPN shared savings rates, the fair market value, and the reasonable value of Plaintiff's services in the marketplace.

67.     With respect to the Claims for services Plaintiff provided to Patient, Plaintiff never agreed to accept discounted rates from Defendants, other than the TRPN shared savings rates, or to be bound by Defendants' reimbursement policies or rate schedules.

68.     Yet, the remittance notices UHC Services sent to Plaintiff for the services provided to Patient included, for example, an explanation such as the following: "CO45[:] Contractual obligations – Charge exceeds fee schedule/maximum allowable or contracted/legislated fee arrangement."

69.     "CO" is a standardized claim adjustment group code meaning "Contractual Obligation," and "45" is a standardized reason code meaning "Charge exceeds maximum fee schedule/maximum allowable or contracted/legislated fee arrangement." Together, these codes are meant to explain why a claim may not have been paid in full and are required under HIPAA to be uniformly applied.

70.     The CO claim adjustment group code is to be used in situations where the insured patient is not financially responsible for any adjustment to a claim due either to a contractual obligation between a provider, like Plaintiff, and a payer, like Defendants, or to an applicable regulatory requirement.

71.     The remittance notices UHC Services sent to Plaintiff for the services provided to Patient included a note to the CO45 claims adjustment code stating in relevant part: "1Q[:] This physician or health care provider is out-of-network. ***Based on an agreement with TRPN*/MCS,**

*the provider has accepted a discount for this service*. The discount shown is your savings and is not included in the amount you owe." (emphasis added).

72.     Thus, the remittance notices UHC Services, as the designated claim administrator responsible for adjudicating the Claims on behalf of UHG, sent to Plaintiff expressly recognize and acknowledge Defendants' agreement to pay Plaintiff the applicable TRPN shared savings rates for the medical services Plaintiff provided to Patient.

73.     Despite this, the payments Defendants made to Plaintiff on the Claims represent a mere fraction of the applicable TRPN shared savings rates, leaving Patient with a false impression that she would not be subject to a balance bill.

74.     Further, the rates paid by Defendants are less than required by law. For claims covered by Sections 627.64194(4) and 641.513(5), Defendants have not paid Plaintiff the lesser of its billed charges or the fair market value of the services provided. For claims not covered by those sections, Defendants have not paid Plaintiff the reasonable value of the services in the marketplace.

75.     Defendants' refusal to pay Plaintiff the applicable TRPN shared savings rates for the medical services Plaintiff provided to Patient, or the fair market value and/or the reasonable value of those services, has caused Plaintiff to suffer damages in an amount equal to the difference between the amounts allowed and paid by Defendants, on the one hand, and the applicable TRPN shared savings rates or the fair market value and reasonable value of the services Plaintiff provided , on the other hand, plus Plaintiff's loss of use of that money. The difference between the amounts paid by Defendants and Plaintiff's billed charges totals $420,221.34.

76.     After receiving the patently insufficient payments on the Claims from UHC Services as the designated claim administrator responsible for adjudicating the Claims on behalf

of UHG, Plaintiff attempted to file internal appeals with Defendants seeking reconsideration of and additional payment on the Claims.

77.     At all material times, all necessary conditions precedent for Defendants to perform their obligations pursuant to Sections 627.64194(4) and 641.513(5), Florida Statutes, and/or the applicable express or implied contract(s) were met.

78.     Plaintiff has retained the services of undersigned counsel to represent it in this action and has agreed to pay them a reasonable attorneys' fee for their services.

### COUNT I
### Breach of Implied-in-Fact Contract – TRPN Shared Savings Rates

79.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 78 above.

80.     At all material times, Defendants knew or should have known that Plaintiff was a non-participating medical provider that provided medical services and staffing at The Surgery Center of Fort Lauderdale and at Plantation General Hospital.

81.     At all material times, Defendants knew or should have known that Plaintiff was a provider within the TRPN shared savings network.

82.     At all material times, Defendants were obligated to cover and pay for medical services Patient received at The Surgery Center of Fort Lauderdale and at Plantation General Hospital.

83.     At all material times, Defendants were aware of their obligations to non-contracted providers like Plaintiff and were aware that Plaintiff provided medical services to Patient with the reasonable expectation and understanding that Plaintiff would be reimbursed by Defendants at applicable TRPN shared savings rates.

84.     At all material times, Defendants knew that Plaintiff had not agreed to be bound by Defendants' reimbursement policies or rate schedules.

[9000.002/5252559/1]

85.    With full knowledge of their obligations and the surrounding circumstances as described in detail above, Defendants:

    a.    issued a member ID card to Patient representing that Defendants recognize shared savings networks, like TRPN, for services provided to Patient;

    b.    approved of Patient presenting to The Surgery Center of Fort Lauderdale and to Plantation General Hospital in Plantation, Florida, on the dates listed above;

    c.    preauthorized Plaintiff providing medical services to Patient as part of the First, Fourth, and Fifth Surgeries;

    d.    approved of Plaintiff providing medical services to Patient as part of the Surgeries; and

    e.    tacitly agreed to pay Plaintiff the applicable TRPN shared savings rates for those medical services.

86.    Plaintiff submitted the Claims for the Surgeries setting forth its billed charges for the services rendered to Patient.

87.    Plaintiff submitted the Claims to UHC Services as the designated administrator responsible for adjudicating the Claims on behalf of UHG.

88.    Defendants acknowledged their approval of Plaintiff's performing medical services as part of the Surgeries and their obligation and responsibility for payment for those services at applicable TRPN shared savings rates by:

    a.    issuing remittance notices to Plaintiff acknowledging Defendants' agreement to pay Plaintiff for its services at applicable TRPN shared savings rates; and

b. representing (falsely), via use of the CO45 claims adjustment code and related remarks on the remittance notices it issued to Plaintiff, that Defendants were paying for services provided to Patient at the applicable TRPN shared savings rates.

89.     Upon information and belief, prior to the dates of the Surgeries, Defendants had paid Plaintiff for services it provided to other patients insured by Defendants at the applicable TRPN shared savings rates.

90.     The conduct and relationship of Plaintiff and Defendants and the surrounding circumstances, including but not limited to the course of dealing and course of performance between Plaintiff and Defendants, as described above, created a binding and enforceable contract pursuant to which Defendants tacitly promised to pay Plaintiff for the services it provided to Patient at applicable TRPN shared savings rates.

91.     All conditions precedent for Defendants' performance of their obligations pursuant to their contract with Plaintiff have been met.

92.     Defendants breached their contract with Plaintiff by failing to pay applicable TRPN shared savings rates for the medical services Plaintiff provided to Patient as part of the Surgeries.

93.     Further, by failing to pay applicable TRPN shared savings rates for the services Plaintiff provided to Patient, thereby maximizing their own profits, Defendants breached the implied covenant of good faith and fair dealing.

94.     As a result of Defendants' breach of their contract to reimburse Plaintiff at applicable TRPN shared savings rates for the medical services it rendered to Patient as part of the Surgeries, Plaintiff has suffered injury and is entitled to monetary damages from Defendants.

95.     Plaintiff seeks compensatory damages, as permitted by applicable law, in an amount equal to the difference between the amounts Defendants paid to Plaintiff for the Claims

and the applicable TRPN shared savings rates for the medical services underlying the Claims, plus interest.

WHEREFORE, Plaintiff prays that this Court enter a judgment against Defendants and in favor of Plaintiff in an amount representing the difference between the amounts Defendants paid to Plaintiff for the claims at issue and the applicable TRPN shared savings rates for the medical services underlying those claims, as determined by the finder of fact, together with an award of prejudgment interest, costs, and such other and further relief as the Court may deem just and proper.

## COUNT II
### Breach of Implied-in-Fact Contract – Fair Market Value

96.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 78 above.

97.     At all material times, Defendants knew or should have known that Plaintiff was a non-participating medical provider that provided medical services and staffing at The Surgery Center of Fort Lauderdale and at Plantation General Hospital.

98.     At all material times, Defendants knew or should have known that Plaintiff is obligated by law to provide emergency services and care to Defendants' members, including Patient, and that Defendants are obligated by law to cover those services.

99.     At all material times, Defendants were obligated to cover and pay for medical services Patient received at The Surgery Center of Fort Lauderdale and at Plantation General Hospital.

100.    At all material times, Defendants were aware of their obligations to non-contracted providers like Plaintiff and were aware that Plaintiff provided medical services to Patient with the reasonable expectation and understanding that Plaintiff would be reimbursed by

Defendants at rates, under *quantum meruit,* reflecting the reasonable value of its services in the marketplace.

101. At all material times, Defendants knew that Plaintiff had not agreed to accept discounted rates from Defendants for the Claims and had not agreed to be bound by Defendants' reimbursement policies or rate schedules.

102. With full knowledge of their obligations and the surrounding circumstances as described in detail above, Defendants:

> f. approved of Patient presenting to The Surgery Center of Fort Lauderdale and to Plantation General Hospital in Plantation, Florida, on the dates listed above;
>
> g. preauthorized Plaintiff providing medical services to Patient as part of the First, Fourth, and Fifth Surgeries;
>
> h. approved of Plaintiff providing medical services to Patient as part of the Surgeries; and
>
> i. impliedly agreed to pay Plaintiff the reasonable value in the marketplace for those medical services.

103. Plaintiff submitted the Claims for the Surgeries seeking reimbursement at rates representing the reasonable value of the services rendered.

104. Plaintiff submitted the Claims to UHC Services as the designated administrator responsible for adjudicating the Claims on behalf of UHG.

105. Defendants acknowledged their obligation and responsibility for payment and their approval of Plaintiff's performing medical services as part of the Surgeries by paying some of Plaintiff's claims for those services, albeit at a rate far below that to which Plaintiff is entitled.

106.    All conditions precedent for Defendants' performance of their obligations pursuant to their implied-in-fact contract have been met.

107.    Defendants breached their implied-in-fact contract with Plaintiff by failing to pay the reasonable value of the medical services Plaintiff provided to Patient as part of the Surgeries.

108.    Along with Defendants' partial and inadequate payments, UHC Services, as the designated administrator responsible for adjudicating the Claims on behalf of UHG, sent Plaintiff remittance notices that cryptically included, for example, only an explanation such as the following: "Charge exceeds fee schedule/maximum allowable or contracted/legislated fee arrangement."

109.    As a result of Defendants' breach of their implied-in-fact contract to reimburse Plaintiff the reasonable value in the marketplace for the medical services it rendered to Patient as part of the Surgeries, Plaintiff has suffered injury and is entitled to monetary damages from Defendants.

110.    Plaintiff seeks compensatory damages, as permitted by applicable law, in an amount equal to the difference between the amounts Defendants paid to Plaintiff for the Claims and the fair market value of the medical services underlying the Claims, plus interest.

WHEREFORE, Plaintiff prays that this Court enter a judgment against Defendants and in favor of Plaintiff in an amount representing the difference between the amounts Defendants paid to Plaintiff for the claims at issue and the fair market value of the medical services underlying those claims, as determined by the finder of fact, together with an award of prejudgment interest, costs, and such other and further relief as the Court may deem just and proper.

## COUNT III
### Unjust Enrichment/Breach of Implied-in-Law Contract

111.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 78 above.

[9000.002/5252559/1]

112.    Plaintiff conferred a direct benefit on Defendants by providing valuable medical services to Patient as part of the Surgeries, with the knowledge and/or approval of Defendants.

113.    Because the Plan provides medical and surgical benefits with respect to mastectomies, Defendants are required by law to provide coverage for all stages of reconstruction in connection with Patient's mastectomies and for prostheses and physical complications of Patient's mastectomies.

114.    Defendants derive a direct benefit from Plaintiff's provision of medical services to their members, because it is through Plaintiff's provision of those services that Defendants fulfill their legal obligations to their members.

115.    The medical services Plaintiff provided to Patient as part of the Surgeries were undisputedly covered because Defendants adjudicated and paid for those services, albeit at an amount less than the reasonable value of the services in the marketplace.

116.    When Plaintiff provided covered medical services to Patient, Defendants received the benefit of having their legal obligations to Patient discharged.

117.    In authorizing Plaintiff's provision of medical services to Patient, Defendants were aware that Plaintiff expected to be paid by Defendants for those services at the reasonable value of the services in the marketplace under *quantum meruit*.

118.    Defendants' liability as the party responsible for payment to Plaintiff for the services it provided to Patient as part of the Surgeries is established by Defendants' approval of the services and Defendants' payment for the services, albeit at an amount less than what was owed.

119.    Defendants voluntarily accepted, retained, and enjoyed, and continue to accept, retain, and enjoy, the benefits conferred upon them by Plaintiff, knowing that Plaintiff expected to be paid the reasonable value of its services in the marketplace.

120.    Defendants have failed to pay the reasonable value of the benefit conferred upon them by Plaintiff, in this case, the reasonable value of the services provided to Patient as part of the Surgeries. As a result, Defendants have withheld for themselves monies that should have been paid to Plaintiff for Plaintiff's services and have received an unjustified windfall.

121.    By underpaying Plaintiff, Defendants have been unjustly enriched. Under the circumstances set forth above, it is unjust and inequitable for Defendants to retain the benefit they received without paying the value of that benefit; *i.e.,* by paying Plaintiff the reasonable value in the marketplace of the medical services Plaintiff provided to Patient.

122.    Plaintiff seeks compensatory damages, as permitted by applicable law, in an amount equal to the difference between the amounts Defendants paid to Plaintiff for the Claims and the fair market value of the medical services underlying the Claims, plus interest.

WHEREFORE, Plaintiff prays that this Court enter a judgment against Defendants and in favor of Plaintiff in an amount representing the difference between the amounts Defendants paid to Plaintiff for the medical services at issue and the reasonable value of those services in the marketplace, as determined by the finder of fact, together with an award of prejudgment interest, costs, and such other and further relief as the Court may deem just and proper.

## COUNT IV
### Promissory Estoppel

123.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 78 above.

124.    Defendants preauthorized the specific medical services Plaintiff provided to Patient as part of the First, Fourth, and Fifth Surgeries.

[9000.002/5252559/1]

125.     Defendants issued a member ID card to Patient representing that Defendants recognize shared savings networks, like TRPN, for services provided to Patient.

126.     Defendants knew or should have known that providers like Plaintiff would rely upon their representation on the member ID card issued to Patient that Defendants recognize shared savings networks, like TRPN, for services provided to Patient.

127.     By authorizing the specific medical services Plaintiff provided to Patient as part of the First, Fourth, and Fifth Surgeries, and by issuing a member ID card to Patient representing that Defendants recognize shared savings networks for services provided to Patient, Defendants promised to pay Plaintiff for the Surgeries at the applicable TRPN shared savings rates.

128.     Defendants acknowledged their promise and obligation to reimburse Plaintiff at the applicable TRPN shared savings rates on the remittance notices it issued to Plaintiff by representing (falsely), via use of the CO45 claims adjustment code and related remarks, that Defendants were paying for certain services provided to Patient at the applicable TRPN shared savings rates. However, Defendants wrongfully failed to reimburse Plaintiff at the promised shared savings rates for the services it provided to Patient as part of the Surgeries.

129.     Plaintiff reasonably relied on Defendants' promise to reimburse Plaintiff at the applicable shared savings rates, as reflected on Patient's member ID card and as subsequently confirmed by Defendants, by agreeing to provide services to Patient as part of the Surgeries.

130.     Defendants reasonably should have expected that Plaintiff would rely upon Defendants' promise to reimburse Plaintiff for the Surgeries at the TRPN applicable shared savings rates.

131. By refusing to reimburse Plaintiff for the Surgeries at the applicable TRPN shared savings rates, Defendants have withheld for themselves monies that should have been paid to Plaintiff for Plaintiff's services and have received an unjustified windfall.

132. Under the circumstances set forth above, it is unjust and inequitable for Defendants to refuse to honor their promise to pay Plaintiff for the Surgeries at the applicable TRPN shared savings rates.

133. Plaintiff seeks compensatory damages, as permitted by applicable law, in an amount equal to the difference between the amounts Defendants paid to Plaintiff for the Claims and the TRPN shared savings rates applicable to those Claims, plus interest.

WHEREFORE, Plaintiff prays that this Court enter a judgment against Defendants and in favor of Plaintiff in an amount representing the difference between the amounts Defendants paid to Plaintiff for the medical services at issue and the TRPN shared savings rates applicable to those services, together with an award of prejudgment interest, costs, and such other and further relief as the Court may deem just and proper.

### COUNT V
#### Violation of Sections 627.64194(4) and 641.513(5) – Second and Third Surgeries

134. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 78 above.

135. Section 641.513(5) imposes a requirement on managed care organizations licensed as HMOs "to ensure that the non-participating providers are adequately paid for a service they are required by law to perform." *Merkle v. Health Options,* 940 So. 2d 1190, 1196 (Fla. 4th DCA 2006). Section 627.64194(4) incorporates by reference the reimbursement requirements of Section 641.513(5) and applies them to claims submitted by non-participating providers to managed care organizations operating preferred provider networks or organizations

(commonly known as "PPO/POS") or exclusive provider networks (commonly known as "EPO").

136.   At all material times, Plaintiff was a non-participating emergency medical provider that staffed the emergency department at Plantation General Hospital.

137.   The medical services Plaintiff provided to Patient as part of the Second and Third Surgeries were emergency services and care as defined in section 641.47(8), Florida Statutes.

138.   Plaintiff submitted the Claims for the Second and Third Surgeries to UHC Services as the designated administrator responsible for adjudicating the Claims on behalf of UHG, which Claims were subject to Sections 627.64194(4) and 641.513(5).

139.   UHC Services and/or UHG, as managed care organizations licensed and/or operating in the state of Florida, were responsible for payment of the Claims for the Second and Third Surgeries.

140.   Section 641.513(5), Florida Statutes, provides as follows:

Reimbursement for services pursuant to this section by a provider who does not have a contract with the health maintenance organization shall be the lesser of:

(a)   The provider's charges;

(b)   The usual and customary provider charges for similar services in the community where the services were provided; or

(c)   The charge mutually agreed to by the health maintenance organization and the provider within 60 days of the submittal of the claim.

Such reimbursement shall be net of any applicable copayment authorized pursuant to subsection (4).

141.   Florida courts have interpreted the phrase "usual and customary provider charges for similar services in the community where the services were provided" under Section

641.513(5) to require payment of "fair market value" for the services rendered. *Baker Cnty. Med. Servs. v. Aetna Health Mgmt., LLC,* 31 So. 3d 842,845–46 (Fla. 1st DCA 2010).

142.    Section 627.64194(4) incorporates by reference the above dictates of section 641.513(5) concerning the reimbursement of a non-participating provider with respect to services provided to patients covered under a PPO/POS or EPO plan.

143.    Sections 627.64194(4) and 641.513(5) impose a duty on UHC Services and/or UHG, as managed care organizations, to reimburse Plaintiff for the Claims according to the statutes' dictates.

144.    Plaintiff has a private right of action under Sections 627.64194(4) and 641.513(5) to enforce the statutes' provisions against Defendants, which right of action is expressly disconnected from the terms and provisions of any particular benefit plan.

145.    The Claims set forth Plaintiff's billed charges for the services it provided to Patient as part of the Second and Third Surgeries.

146.    UHC Services, as the designated administrator responsible for adjudicating the Claims on behalf of UHG, issued a remittance notice to Plaintiff for the Third Surgery stating in part: "This service has been reimbursed using Data iSight, which utilizes cost data if available (facilities) or paid data (professionals)."

147.    Data iSight is a repricing software. Its methodology does not take into account the amounts providers *actually charge* in determining its proposed reimbursement rates.

148.    Upon information and belief, Data iSight's methodology artificially reduces reimbursement rates Defendants pay to out-of-network providers to well below the fair market value.

149.   UHC Services and/or UHG issued payments to Plaintiff for the Claims for the Second and Third Surgeries, but at a rate significantly below the "usual and customary provider charges for similar services in the community where the services were provided" that Defendants were obligated to pay Plaintiff pursuant to Sections 627.64194(4) and 641.513(5).

150.   UHC Services and/or UHG violated Sections 627.64194(4) and 641.513(5) by failing to pay Plaintiff the "usual and customary provider charges for similar services in the community where the services were provided" for the Claims for the Second and Third Surgeries.

151.   As a result of UHC Services and/or UHG's failure to fulfill its legal obligations to reimburse Plaintiff in accordance with Sections 627.64194(4) and 641.513(5), Plaintiff has suffered injury and is entitled to monetary damages from UHC Services and/or UHG.

152.   Plaintiff seeks compensatory damages, as permitted by applicable law, in an amount equal to the difference between the amounts Defendants paid to Plaintiff for the Claims for the Second and Third Surgeries and the fair market value of the medical services underlying those Claims, plus interest.

WHEREFORE, Plaintiff prays that this Court enter a judgment against Defendants and in favor of Plaintiff in an amount representing the difference between the amounts Defendants paid to Plaintiff for the claims at issue and the fair market value of the medical services underlying those claims, as determined by the finder of fact, together with an award of prejudgment interest, costs, and such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of all issues so triable.

DATED this 3rd day of December, 2020.

Respectfully submitted,

**SHAPIRO, BLASI, WASSERMAN & HERMANN, P.A.**
7777 Glades Road, Suite 400
Boca Raton, Florida 33434
Telephone:      (561) 477-7800
Facsimile: (561) 477-7722

By:    _s/ Richard P. Hermann, II_____
       RICHARD P. HERMANN, II, ESQ
       Florida Bar No. 110019
       Primary E-Mail: rhermann@sbwlawfirm.com
       Secondary E-Mail: floridaservice@sbwh.law
       GENEVIEVE BAISDEN, ESQ.
       Florida Bar No. 100058
       Primary E-Mail: gbaisden@sbwh.law
       Secondary E-Mail: sfiero@sbwlawfirm.com

IN THE CIRCUIT COURT OF THE 17TH
JUDICIAL CIRCUIT IN AND FOR
BROWARD   COUNTY, FLORIDA
CASE NO.:

VANGUARD PLASTIC SURGERY, PLLC d/b/a
VANGUARD AESTHETIC AND PLASTIC
SURGERY,

          Plaintiff,

vs.

UNITEDHEALTH GROUP INCORPORATED, a
foreign corporation, and UNITED HEALTHCARE
SERVICES, INC., a foreign corporation,

          Defendants.

_____/

## CIVIL ACTION AMENDED SUMMONS

THE STATE OF FLORIDA
To Each Sheriff of the State:

     YOU ARE COMMANDED to serve this summons and a copy of the Complaint in this
action on Defendants:

**UNITEDHEALTH GROUP INCORPORATED**
**9900 Bren Road East**
**Minnetonka, Minnesota 55343**

     A lawsuit has been filed against this corporation.  The Defendant is required to serve
written defenses to the Complaint on RICHARD P. HERMANN, II, ESQ., Shapiro, Blasi,
Wasserman & Hermann, P.A., Plaintiffs' attorney, whose address is 7777 Glades Road, Suite
400, Boca Raton, Florida 33434, within 20 days after service of summons on the Defendant,
exclusive of the day of service, and to file the original of the defenses with the Clerk of this
Court either before service on Plaintiffs' attorney or immediately thereafter.  If the Defendant
fails to do so, a default will be entered against that Defendant for the relief demanded in the
Complaint.

DATED on _____DEC 04 2020_____, 2020.

[9000.002/5252238/1]

Case 0:21-cv-60023-AHS Document 1-3 Entered on FLSD Docket 01/05/2021 Page 31 of 44

IN THE CIRCUIT COURT OF THE 17TH
JUDICIAL CIRCUIT IN AND FOR
BROWARD   COUNTY, FLORIDA
CASE NO.:

VANGUARD PLASTIC SURGERY, PLLC d/b/a
VANGUARD AESTHETIC AND PLASTIC
SURGERY,

        Plaintiff,

vs.

UNITEDHEALTH GROUP INCORPORATED, a
foreign corporation, and UNITED HEALTHCARE
SERVICES, INC., a foreign corporation,

        Defendants.

_____/

## CIVIL ACTION SUMMONS

THE STATE OF FLORIDA
To Each Sheriff of the State:

      YOU ARE COMMANDED to serve this summons and a copy of the Complaint in this
action on Defendant:

**UNITED HEALTHCARE SERVICES, INC.**
**By serving its Registered Agent:**
**CT Corporation System**
**1200 S. Pine Island Rd.**
**Plantation, FL 33324**

      A lawsuit has been filed against this corporation.  The Defendant is required to serve
written defenses to the Complaint on RICHARD P. HERMANN, II, ESQ., Shapiro, Blasi,
Wasserman & Hermann, P.A., Plaintiffs' attorney, whose address is 7777 Glades Road, Suite
400, Boca Raton, Florida 33434, within 20 days after service of summons on the Defendant,
exclusive of the day of service, and to file the original of the defenses with the Clerk of this
Court either before service on Plaintiffs' attorney or immediately thereafter.  If the Defendant
fails to do so, a default will be entered against that Defendant for the relief demanded in the
Complaint.

[9000.002/5252239/1]

IN THE CIRCUIT COURT OF THE 17TH
JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

CASE NO.: CACE-20-020259

DIVISION: 05

VANGUARD PLASTIC SURGERY, PLLC d/b/a
VANGUARD AESTHETIC AND PLASTIC
SURGERY,

       Plaintiff,

vs.

UNITEDHEALTH GROUP INCORPORATED, a
foreign corporation, and UNITED HEALTHCARE
SERVICES, INC., a foreign corporation,

       Defendants.

_____/

## NOTICE OF FILING RETURN OF SERVICE

Plaintiff Vanguard Plastic Surgery, PLLC d/b/a Vanguard Aesthetic & Plastic Surgery ("Plaintiff"), by and through its undersigned counsel, and pursuant to the applicable Rules of Civil Procedure, hereby gives notice of filing the attached Verified Return of Service on Defendant, UnitedHealth Group Incorporated, a foreign corporation ("UHG"), in the above titled action.

*[Certificate of Service on following page]*

[9000.002/5253462/1]

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been furnished

by Electronic Mail to all counsel of record through the Court's E-Portal on December 8, 2020.

**SHAPIRO, BLASI, WASSERMAN & HERMANN, P.A.**
7777 Glades Road, Suite 400
Boca Raton, Florida 33434
Telephone:     (561) 477-7800
Facsimile: (561) 477-7722

By:   *s/ Richard P. Hermann, II*
      RICHARD P. HERMANN, II, ESQ
      Florida Bar No. 110019
      Primary E-Mail: rhermann@sbwlawfirm.com
      Secondary E-Mail: floridaservice@sbwh.law
      GENEVIEVE BAISDEN, ESQ.
      Florida Bar No. 100058
      Primary E-Mail:  gbaisden@sbwh.law
      Secondary E-Mail:  sfiero@sbwlawfirm.com

[9000.002/5253462/1]

## VERIFIED RETURN OF SERVICE

State of Florida                County of Broward                Circuit Court

Case Number: CACE 20-020259 05

BII2020011851

Plaintiff:
**VANGUARD PLASTIC SURGERY PLLC D/B/A VANGUARD AESTHETIC
AND PLASTIC SURGERY**
vs.
Defendant:
**UNITEDHEALTH GROUP INCORPORATED, ET AL**

For: Richard P Hermann, II
    Shapiro, Blasi, Wasserman & Hermann, P.A.

Received by Burke Process Service, Inc on the 4th day of December, 2020 at 2:51 pm to be served on
**UNITEDHEALTH GROUP INCORP-ORATED, 9900 BREN ROAD EAST, MINNETONKA, MN 55343**I,
__Timothy____ __Brown__, do hereby affirm that on the __7__ day of __December__, 202_0_ at
_1:11_ _p_.m., executed service by delivering a true copy of the **Civil Action Summons, Complaint and
Demand For Jury Trial** in accordance with state statutes in the manner marked below:

( ) INDIVIDUAL SERVICE: By serving therein named individual at listed business address

( ) DESIGNATED SERVICE, : By serving _____, as
_____, who stated that he/she was the designated person to accept service on
the within named subject's behalf in their absence, and informed said person of the contents therein in
compliance with state statutes.

( ) CORPORATE SERVICE REGISTERED AGENT: By serving _____ as
Registered Agent

(X) CORPORATE SERVICE: By serving __JANA FLOYD_____ as
__Intake coordinator__, as an agent/employee of the corporation or Registered Agent,  as
allowed by Florida Statutes and informed said person of the contents wherein.

( ) CORPORATE SERVED AT USUAL PLACE OF ABODE by leaving a copy with the date and hour
endorsed thereon by me to _____, who is co-resident & is 15 years of age or older
of Corporate officer, Registered Agent or Corporate Director: _____, as allowed by FL
Statutes 48.081 (3) (b) and 48.031 (1) (a) and informed said person of the contents wherein.

( ) NON SERVICE: For the reason detailed in the Comments below.

COMMENTS: __SERVED AT Registurd Agent CT CORPORATION SERVICES__
_____ __1010 N. DALE STREET__
_____ __S. PAUL, MN 55117__
_____

Age _40_ Sex M(F) Race __White__ Height _5-7_ Weight _130_ Hair __BROWN__ Glasses
Y (N)

## <u>VERIFIED RETURN OF SERVICE For CACE 20-020259 05</u>

Under penalties of perjury, I declare that I have read the foregoing Return of Service and the facts stated are true and correct. NO NOTARY REQUIRED PURSUANT TO F.S. 92.525 (2).

12-7-20

PROCESS SERVER # _____
Appointed in accordance with State Statutes

**Burke Process Service, Inc**
**7200 W. Camino Real**
**Suite 102**
**Boca Raton, FL 33433**
**(954) 514-0116**

Our Job Serial Number: 2020011851

Copyright © 1992-2020 Database Services, Inc. - Process Server's Toolbox V8.1t

Case 0:21-cv-60023-AHS Document 1-3 Entered on FLSD Docket 01/05/2021 Page 36 of 44

IN THE CIRCUIT COURT OF THE 17TH
JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

CASE NO.: CACE-20-020259

DIVISION: 05

VANGUARD PLASTIC SURGERY, PLLC d/b/a
VANGUARD AESTHETIC AND PLASTIC
SURGERY,

      Plaintiff,

vs.

UNITEDHEALTH GROUP INCORPORATED, a
foreign corporation, and UNITED HEALTHCARE
SERVICES, INC., a foreign corporation,

      Defendants.

_____/

## NOTICE OF FILING RETURN OF SERVICE

Plaintiff Vanguard Plastic Surgery, PLLC d/b/a Vanguard Aesthetic & Plastic Surgery

("**Plaintiff**"), by and through its undersigned counsel, and pursuant to the applicable Rules of

Civil Procedure, hereby gives notice of filing the attached Verified Return of Service on

Defendant, United Healthcare Services, Inc., a foreign corporation ("UHC Services"), in the

above titled action.

*[Certificate of Service on following page]*

[9000.002/5253737/1]

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been furnished

by Electronic Mail to all counsel of record through the Court's E-Portal on December 11, 2020.

**SHAPIRO, BLASI, WASSERMAN & HERMANN, P.A.**
7777 Glades Road, Suite 400
Boca Raton, Florida 33434
Telephone:      (561) 477-7800
Facsimile: (561) 477-7722

By:   *s/ Richard P. Hermann, II*
RICHARD P. HERMANN, II, ESQ
Florida Bar No. 110019
Primary E-Mail: rhermann@sbwlawfirm.com
Secondary E-Mail: floridaservice@sbwh.law
GENEVIEVE BAISDEN, ESQ.
Florida Bar No. 100058
Primary E-Mail:  gbaisden@sbwh.law
Secondary E-Mail:  sfiero@sbwlawfirm.com

[9000.002/5253737/1]

## <u>VERIFIED RETURN OF SERVICE</u>

**State of Florida**                    **County of Broward**                        **Circuit Court**

Case Number: CACE 20-020259 05

Plaintiff:
**VANGUARD PLASTIC SURGERY PLLC D/B/A VANGUARD AESTHETIC AND
PLASTIC SURGERY**

BII2020011850

vs.

Defendant:
**UNITEDHEALTH GROUP INCORPORATED, ET AL**

For:
Richard P Hermann, II
Shapiro, Blasi, Wasserman & Hermann, P.A.
7777 Glades Road
Suite #400
Boca Raton, FL 33308

Received by Burke Process Service, Inc on the 4th day of December, 2020 at 2:51 pm to be served on **UNITED
HEALTHCARE SERVICES INC BY SERVING ITS REGISTERED AGENT CT CORPORATION SYSTEM, 1200
SOUTH PINE ISLAND ROAD, PLANTATION, FL 33324**.

I, April D. Lewis, do hereby affirm that on the **8th day of December, 2020** at **2:00 pm, I:**

**CORPORATE:** served by delivering a true copy of the **Civil Action Summons, Complaint and Demand For Jury
Trial** with the date and hour of service endorsed thereon by me, to: **DONNA MOCH as DESIGNATED AGENT,
employed therein and authorized to accept service** for UNITED HEALTHCARE SERVICES INC BY SERVING
ITS REGISTERED AGENT CT CORPORATION SYSTEM, at the address of: **1200 SOUTH PINE ISLAND ROAD,
PLANTATION, FL 33324**, and informed said person of the contents therein, in compliance with state statutes.

Under penalties of perjury, I declare that I have read the foregoing Return of Service and the facts stated are true
and correct. NO NOTARY REQUIRED PURSUANT TO F.S. 92.525 (2).

**April D. Lewis**
SPS # 1482

**Burke Process Service, Inc**
**7200 W. Camino Real**
**Suite 102**
**Boca Raton, FL 33433**
**(954) 514-0116**

Our Job Serial Number: BII-2020011850

Copyright © 1992-2020 Database Services, Inc. - Process Server's Toolbox V8.1t

IN THE CIRCUIT COURT FOR THE 17th JUDICIAL CIRCUIT, IN AND FOR BROWARD COUNTY, FLORIDA

CASE NO.: CACE-20-020259 (05)

VANGUARD PLASTIC SURGERY, PLLC
d/b/a VANGUARD AESTHETIC AND
PLASTIC SURGERY,

       Plaintiff,

v.

UNITEDHEALTH GROUP INCORPORATED,
a foreign corporation, and
UNITED HEALTHCARE SERVICES, INC.,
a foreign corporation,

       Defendants.

_____/

**NOTICE OF APPEARANCE AND DESIGNATION OF PRIMARY
AND SECONDARY E-MAIL ADDRESSES**

       Gera R. Peoples, Esq., Irene Bassel Frick, Esq. and Ta'Ronce Stowes Esq. of the law firm Akerman LLP, hereby give notice of their appearance as counsel on behalf of Defendants, UNITEDHEALTH GROUP INCORPORATED and UNITED HEALTHCARE SERVICES, INC. (hereinafter "UNITED DEFENDANTS"), and request that copies of all orders, process, pleadings, and other documents filed or served in this matter be served on them via eService or at the address listed below, as appropriate.   In compliance with Florida Rule of Judicial Administration 2.516(b)(1)(A), they hereby designate the following primary and secondary e-mail addresses for eService:

       Primary E-mail:      gera.peoples@akerman.com
       Secondary E-mail:  magda.cabra@akerman.com

       Primary E-mail:      irene.basselfrick@akerman.com
       Secondary E-mail:  nicole.emmett@akerman.com

1

Primary E-mail:     taronce.stowes@akerman.com
Secondary E-mail:   magda.cabra@akerman.com

Dated: January 4, 2021.         Respectfully submitted,

**AKERMAN LLP**
Three Brickell City Centre
98 Southeast Seventh Street, Ste. 1100
Miami, Florida  33131
Telephone:  (305) 374-5600

By:/s/ Gera R. Peoples
**Gera R. Peoples, Esq.**
Florida Bar No. 450022
gera.peoples@akerman.com
magda.cabra@akerman.com
**Ta'Ronce Stowes, Esq.**
Florida Bar No. 107421
taronce.stowes@akerman.com
magda.cabra@akerman.com

and

**AKERMAN LLP**
401 East Jackson Street, Suite 1700
Tampa, Florida 33602
Telephone:  (813) 223-7333
**Irene Bassel Frick, Esq.**
Florida Bar No. 0158739
irene.basselfrick@akerman.com
nicole.emmett@akerman.com

*Counsel for Defendants*
*UNITEDHEALTH GROUP INCORPORATED and*
*UNITED HEALTHCARE SERVICES, INC.*

2

<u>**CERTIFICATE OF SERVICE**</u>

      I hereby certify that on January 4, 2021, I electronically filed the foregoing with the Clerk of the Court using the Florida E-portal system, which will send notification of such filing and by Electronic Service e-mail to the following:

      Richard P. Hermann, II, Esq.
      Shapiro, Blasi, Wasserman & Hermann, P.A.
      7777 Glades Road, Suite 400
      Boca Raton, FL 33434
      Telephone:  (561) 477-7800
      Facsimile:  (561) 477-7722
      Florida Bar No. 110019
      Primary E-Mail: rhermann@sbwlawfirm.com
      Secondary E-Mail: floridaservice@sbwh.law
      GENEVIEVE BAISDEN, ESQ.
      Florida Bar No. 100058
      Primary E-Mail: gbaisden@sbwh.law
      Secondary E-Mail: sfiero@sbwlawfirm.com

                                <u>/s/ Gera R. Peoples</u>
                                Gera R. Peoples

## Vanguard Plastic Surgery, PLLC Plaintiff vs. UnitedHealth Group Incorporated, et al Defendant

**Broward County Case Number:** CACE20020259
**State Reporting Number:** 062020CA020259AXXXCE
**Court Type:** Civil
**Case Type:** Contract and Indebtedness
**Incident Date:** N/A
**Filing Date:** 12/03/2020
**Court Location:** Central Courthouse
**Case Status:** Pending
**Magistrate Id / Name:** N/A
**Judge ID / Name:** 05 Bidwill, Martin J.

### Party(ies)

Total: 3

| Party Type | Party Name | ❓ Address | ❓ Attorneys / Address ★ Denotes Lead Attorney |
|---|---|---|---|
| Plaintiff | **Vanguard Plastic Surgery, PLLC** | | ★Hermann II, Richard P, ESQ. Retained Bar ID: 110019 Shapiro Blasi Wasserman & Hermann, P.A. 7777 Glades Road, Suite 400 Boca Raton, FL 33434-4193 **Status: Active** |
| Defendant | **UnitedHealth Group Incorporated** | | |
| Defendant | **United Healthcare Services, Inc.** | | |

### Disposition(s)

Total: 0

| Date | Statistical Closure(s) |
|---|---|

| Date | Disposition(s) | View | Page(s) |
|---|---|---|---|

## − Event(s) & Document(s)

Total: 7

| Date | Description | Additional Text | View | Pages |
|------|-------------|-----------------|------|-------|
| 01/04/2021 | **Notice of Appearance** | AKERMAN LLP<br>Party: *Defendant* UnitedHealth Group Incorporated *Defendant* United Healthcare Services, Inc. | 📄 | 3 |
| 12/11/2020 | **Summons Returned Served** | the 8th day of December, 2020 at 2:00 pm<br>Party: *Defendant* United Healthcare Services, Inc. | 📄 | 3 |
| 12/08/2020 | **Summons Returned Served** | 12/07/20<br>Party: *Defendant* United Healthcare Services, Inc. | 📄 | 4 |
| 12/03/2020 | **Civil Cover Sheet** | Amount: $100,001.00 | 📄 | 3 |
| 12/03/2020 | **Complaint (eFiled)** | AND DEMAND FOR JURY TRIAL<br>Party: *Plaintiff* Vanguard Plastic Surgery, PLLC | 📄 | 27 |
| 12/03/2020 | **eSummons Issuance** | Party: *Defendant* UnitedHealth Group Incorporated | 📄 | 2 |
| 12/03/2020 | **eSummons Issuance** | Party: *Defendant* United Healthcare Services, Inc. | 📄 | 2 |

## − Hearing(s)

Total: 0

**There is no Disposition information available for this case.**

## − Related Case(s)

Total: 0

**There is no related case information available for this case.**