UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 21-CV-60023-AHS

VANGUARD PLASTIC SURGERY, PLLC,
d/b/a VANGUARD AESTHETIC AND
PLASTIC SURGERY,

v.

UNITEDHEALTH GROUP INCORPORATED,
a foreign a corporation, and UNITED
HEALTHCARE SERVICES, INC.,
a foreign corporation,

    Defendants.
_____/

## DEFENDANTS' MOTION TO DISMISS

Defendants, UnitedHealth Group Incorporated ("UHG") and United HealthCare Services, Inc. ("UHS") (collectively, the "United Defendants"), pursuant to Federal Rule of Civil Procedure 12(b)(6), hereby move to dismiss the Complaint ("Complaint") [ECF No. 1-3] filed by Plaintiff Vanguard Plastic Surgery, PLLC d/b/a Vanguard Aesthetic and Plastic Surgery. As support, the United Defendants state the following:

### I.    INTRODUCTION

Plaintiff filed this action to recover additional payments for paid and denied health benefit claims for five medical surgical procedures performed on patient-subscriber, B.H.S. ("Member") between March 2018 and August 2019. [Compl., ECF No. 1-3, ¶¶ 1-2, 38-58.] The Member is covered by a health benefits plan ("Plan") allegedly "insured, operated, and/or administered" by the United Defendants [*Id.* ¶ 1)]. The Plan is governed by the Employee Retirement Income Security Act of 1974, as amended 29 U.S.C. § 1001 *et seq.* ("ERISA").

Plaintiff is a non-participating, or out-of-network provider [*id.* ¶ 60], which means that Plaintiff and the United Defendants have not agreed to *any* terms or conditions, including *rates*, for any medical services provided by Plaintiff to any participants of health plans administered by the United Defendants.  Plaintiff attempts to allege five causes of action: (i) breach of implied-in-fact contract concerning reimbursement at shared savings rates; (ii) breach of implied-in-fact contract concerning reimbursement at fair market value; (iii) unjust enrichment and/or breach of implied-in-law contract; (iv) promissory estoppel; and (v) violation of Sections 641.513(5) and 627.64194(4), Florida Statutes.

For the following reasons, Plaintiff's Complaint must be dismissed in its entirety. First, each of Plaintiff's state-law causes of actions are defensively preempted by ERISA Section 514(a) because they "relate to" a Plan governed by ERISA.  Second, Count V must be dismissed because Sections 641.513(5) and 627.64194(4) do not apply to the self-funded health Plan at issue.  Third, assuming *arguendo* that Plaintiff's causes of action are construed as asserting claims for ERISA plan benefits, such benefit claims fail because Plaintiff has not alleged exhaustion of the Plan's administrative remedies.  Fourth, Counts I and II fail because Plaintiff does not plead sufficient facts showing the requisite interaction or the Parties mutual assent to the essential payments term, both of which are necessary to establish an enforceable implied-in-fact contract.  Fifth, Count III must be dismissed because Plaintiff fails to sufficiently demonstrate that it conferred a benefit directly upon the United Defendants as a result of providing medical services to a member of their Plan.  Sixth, the allegations underlying Count IV are too indefinite to sustain a promissory estoppel claims.

## II. LEGAL STANDARD

### A. General Standard.

To survive a Rule 12(b)(6) motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), or in other words, "enough facts to plausibly allege the required elements," *Hill v. Resurgent Capital Servs., L.P.*, 461 F. Supp. 3d 1232, 1236 (S.D. Fla. 2020). "[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Id.* (quoting *Oxford Asset Mgmt., Ltd. V. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002)). Nor will "a formulaic recitation of the elements of a cause of action." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

### B. The Court May Consider the Terms of the Member's Plan in Ruling on this Motion to Dismiss.

Generally, "analysis of a 12(b)(6) motion is limited primarily to the face of the complaint and attachments thereto." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1368 (11th Cir. 1997). But "where the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) . . . ." *Id.* at 1369. Plaintiff's Complaint repeatedly refers to the Plan. [*See* Compl., ECF No. 1-4, ¶¶ 1, 27, 40, 113]. Because employee welfare benefits plans are contracts, examination of the terms within the benefits plan referenced throughout the Complaint—*i.e.*, the Plan—is critical to determining whether Plaintiff can plausibly show that the Member is either a party to, or beneficiary of, the Plan and, therefore, that the services allegedly provided to the Member are reimbursable under Sections 641.513(5) and 627.64194. *See Alexandra H. v. Oxford Health Ins. Freedom Access Plan*, 833 F.3d 1299, 1306-07 (11th Cir. 2016) (referring to an employee welfare benefits plan as a "contract" and

3

recognizing that district courts in Florida have "[b]orrow[ed] from state contract law" in "first look[ing] to the plain and ordinary meaning of the policy terms to interpret the contract"); *see also Twombly*, 550 U.S. at 570; *Hill*, 461 F. Supp. 3d at 1236.

For these reasons, consideration of the Plan's terms in ruling on the instant Rule 12(b)(6) Motion is appropriate. *See Brooks*, 116 F.3d at 1368.

**III. DISCUSSION**

    **A. ERISA Preempts Plaintiff's Causes of Action.**

There are two types of preemption under ERISA: complete and defensive preemption. *Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1343 (11th Cir. 2009); *see also See Alcalde v. Blue Cross & Blue Shield of Fla., Inc.*, 62 F. Supp. 3d 1360, 1364 (S.D. Fla. 2014 ("ERISA expressly displaces or preempts the application of state law claims in two ways: [1] defensive or conflict preemption under Section 514(a) of the Act; and [2] complete or superpreemption under Section 502(a) of the Act."). Complete preemption derives from its civil enforcement provision—29 U.S.C. § 1132(a), also known as ERISA Section 502(a)—which "creates a civil cause of action for participants and beneficiaries of ERISA plans to recover benefits or enforce rights under an ERISA plan." *Borrero v. United Healthcare of N.Y., Inc.*, 610 F.3d 1296, 1301 (11th Cir. 2010) (quoting ERISA § 502(a)). Complete preemption "furnishes subject-matter *jurisdiction* under 28 U.S.C. § 1331." *Butero v. Royal Maccabees Life Ins. Co.*, 174 F.3d 1207, 1211-12 (11th Cir. 1999) (emphasis added).

"Defensive" preemption, also known as "conflict preemption," is a substantive defense to preempted state law claims. *Jones v. LMR Int'l, Inc.*, 457 F.3d 1174, 1179 (11th Cir. 2006). Defensive preemption arises from ERISA's express preemption provision, Section 514(a), and is "***significantly broader*** than complete preemption" under Section 502(a). *Alcalde*, 62 F. Supp. 3d

at 1364 (emphasis added). Where a cause of action is "defensively" preempted, the cause of action must be dismissed. *See Butero*, 174 F.3d at 1212 (holding that "defensive preemption . . . require[s] dismissal of state-law claims."). Complete preemption is not at issue here since this Court has diversity jurisdiction over this dispute. [*See* ECF No. 1, Notice of Removal, ¶¶ 18-26.]

### 1. *Plaintiff's causes of action are defensively preempted.*

The Member's Plan is an employee benefits plan governed by ERISA. [*See, e.g.*, **Exhibit A** at 1 (stating that the Plan "includes certain component employee benefit programs described in this Handbook); *id.* at 87 (introducing the "Employee Health Benefits"); *id.* at 575 (stating that the "Plan is the Company's formal ERISA Plan" and that the "Plan Document is the formal written instrument required by ERISA"); *id.* at 595 (setting forth "Your Rights under ERISA").]

Section 514(a) of ERISA states that the Act's provisions "shall supersede *any and all State laws* insofar as they may now or hereafter *relate to* any [ERISA] employee benefit plan." *FMC Corp. v. Holliday*, 498 U.S. 52, 57 (1990) (emphasis added). Accordingly, a "state law claim is defensively preempted under ERISA if it relates to an ERISA plan." *Jones*, 457 F.3d at 1179. Courts throughout the Eleventh Circuit have applied this language in dismissing state-law claims that were both similar to the causes of action, and predicated on allegations comparable to those, that Plaintiff asserts here. The factually-analogous case of *Alcalde*, for example, is illustrative. There, this Court concluded that the plaintiff's claims "related to" the ERISA plans in question, reasoning:

> Plaintiff provided medical services to patients that were participating in Defendant's employee benefits plan, which is undisputedly governed by ERISA. Plaintiff is now seeking payment for the medical services that were provided based on the patients' participation in the ERISA plans. Accordingly, any determination of the amount Defendant owes Plaintiff relates to the

> ERISA plans. As such, Plaintiff's state law claims [for breach of express and oral agreements, breach of third-party beneficiary contract, open account, unjust enrichment, and violation of the Florida Deceptive and Unfair Trade Practices Act] are defensively preempted and must be dismissed.

62 F. Supp. 3d at 1363, 1365; *see also FFP, LLC v. UnitedHealthcare Ins. Co.*, No. 0:18-cv-60696-UU, 2018 U.S. Dist. LEXIS 96062, at *6-7 (S.D. Fla. June 5, 2018) (holding that the plaintiff pharmacy's state-law claims—breach of contract, unjust enrichment, *quantum meruit*, open account, and account stated—premised on underpayments were defensively preempted in that the plaintiff sought "a determination of the amount [d]efendant owes it for medical services that [p]laintiff provided to ERISA-plan patients"); *Lab. Physicians, P.A. v. AvMed, Inc.*, No. 8:08-cv-1726-T-26EAJ, 2009 WL 2486328, at *1 (M.D. Fla. Aug. 10, 2009) (granting defendant's motion on the pleadings on the basis that ERISA preempted a provider's claims for: (i) *quantum meruit*; (ii) unjust enrichment; (iii) violation of state statute; and (iv) declaratory judgment under Section 641.513(5), relative to out-of-network services provided to the defendant-HMO's members).

Similarly, Plaintiff allegedly provided medical services to the Member, who is participating in the United Defendants' ERISA-governed employee benefits Plan. No matter how Plaintiff labels its state-law causes of action, "any determination of the amount [the United] Defendant[s] owe[] Plaintiff relates to the ERISA [P]lan[]. As such, Plaintiff's state law claims are defensively preempted and must be dismissed." *Alcalde*, 62 F. Supp. 3d at 1365. Further, the Supreme Court has found the sweep of ERISA's express preemption clause to be "expansive" such that, when interpreting what "relate[s] to" an employee benefit plan, the Court has deemed it sufficient that a state-law claim has a "connection with or reference to such a plan." *Pilot Life Ins, Co. v. Dedeaux*, 481 U.S. 41, 47 (1987) (citations omitted); *see also*

6

*Gobeille v. Liberty Mut. Ins. Co.*, 136 S. Ct. 936, 943 (2016) (same). In that regard, a state-law claim has a "reference to" an ERISA plan when it "acts immediately and exclusively upon ERISA plans" or where "the existence of ERISA plans is essential to the law's operation." *Gobeille*, 136 S. Ct. at 943 (citations omitted).

Moreover, Plaintiff's state claims "relate to" the Plan because any payment allegedly due to Plaintiff hinges upon the existence of a contract for health care coverage or an insurance policy. Plaintiff's recovery from an insurer under Section 627.64194(4) is premised on Plaintiff rendering emergency services within the Plan's coverage terms. *See* § 627.64194(2), Fla. Stat. Accordingly, ERISA defensively preempts Plaintiff's statutory claim because it "relates to" the ERISA Plan covering the Member, since the "***existence*** of [the Plan] *is a critical factor in establishing liability*" under the state law. *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 140-41 (1990) (emphasis added; holding that a state law cause of action premised on the existence of an ERISA plan was preempted); *see also Gobeille*, 136 S. Ct. at 943.

The facts alleged in the Complaint compel the same conclusion with respect to the remaining causes of action. Plaintiff attempts to assert causes of action for promissory estoppel and breach of implied-in-fact arising from the United Defendants' alleged failure to pay fair market value or shared savings network rates (Count I, II, and IV). These causes of action are based on the Member's status under the Plan. [Compl., ECF No. 1-3, ¶¶ 33, 79, 98, 123, 125-27.] These counts also hinge upon the United Defendants' alleged preauthorization of three of the surgeries in accordance with the Member's Plan and representations on a "member ID card" issued with the Plan. [*Id.* ¶¶ 85.a., 102.g., 123, 127.] For instance, Count I is based on the alleged "TRNP shared saving rate." [*Id.* ¶¶ 72-75, 81, 83, 85, 88-95.] The application of any shared saving programs requires interpretation of the United Defendants' shared saving as set

7

forth in the Plan. [*See* **Exhibit A**, 76, 483.] With respect to the cause of action for unjust enrichment/breach of implied-in-law contract (Count III), Plaintiff identifies the underlying "benefit" allegedly conferred upon the United Defendants as the discharge of their coverage obligation—which existed *solely* "[b]ecause the Plan provides medical and surgical benefits with respect to mastectomies." [Compl., ECF No. 1-3, ¶¶ 113-14, 116.] As these allegations show, Plaintiff has not asserted a single cause of action that can be prosecuted independent of the Plan's existence and its interpretation. *See Ingersoll-Rand*, 498 U.S. at 140-41; *Gobeille*, 136 S. Ct. at 943.

Accordingly, the Complaint must be dismissed due to ERISA's defensive preemption of each cause of action asserted.

### 2. *The "rate v. right" exception to ERISA preemption is inapplicable.*

The Complaint alleges that "this action concerns only the rate of payment and not the right to payment." [Compl., ECF No. 1-3, ¶ 10.] Plaintiff's attempt to invoke the "rate v. right" exception to ERISA preemption is unavailing, as that exception does not apply to defensive preemption and to ERISA claims involving non-network providers, which Plaintiff claims to be. [*Id.* ¶¶ 7, 136.]

While the standard for expansive defensive preemption is whether a state-law claim "relates to" an ERISA plan, the test to establish the narrower ERISA complete preemption requires analysis of whether the claim implicates legal duties independent of those imposed by ERISA. Specifically, some courts have held that the distinction of "right v. rate" benefit-claims dispute is relevant to the complete preemption two-prong test because state-law claims for payment at rates established *in a contract between a provider and an insurer* are founded on duties independent of those imposed by ERISA and, therefore, are not completely preempted.

*See, e.g.*, *Conn. State Dental,* 591 F.3d at 1350.  This is simply inapplicable here because analysis of the narrower jurisdictional concept of complete preemption is not necessary.  Instead, the broader defensive preemption standard applies to preempt the Plaintiff's state-law claims because they "relate to" the Plan.  The "rate" versus "right" of payment distinction is irrelevant to the defensive preemption question, which applies the ***"relates to"*** standard, and does not require the application of the two-prong test.  *See Surgery Ctr. of Viera, LLC v. UnitedHealthcare Ins. Co., et al.,* No. 6:20-cv-668-Orl-37DRI, at 9 (concluding that the "rate versus right" does not apply to defensive preemption, in deciding that the plaintiff Surgery Center of Viera LLC's state law claims were preempted:  "Under complete preemption, the court must determine whether the plaintiff could have brought the claim under ERISA's civil enforcement provisions.  Defensive preemption is a separate and distinct issue, broadly asking whether the state law claims 'relate to' an ERISA plan.  So the rate/right distinction does not apply here and the Court turns to whether the state law claims are defensively preempted." (citations omitted)); *Surgery Ctr. of Viera, LLC v. UnitedHealthcare Ins. Co., et al.*, Case No. 6:20-cv-183-Orl-37LRH (M.D. Fla. July 30, 2020) (dismissing complaint and concluding that Surgery Center of Viera, LLC's state law claims were preempted by ERISA) (same); *Surgery Ctr. of Viera, LLC v. Cigna Health & Life Ins. Co., et al.*, Case No. 6:20-cv-152-Orl-37EJK, 2020 WL 4227428 (M.D. Fla. July 23, 2020) (same).  (*See* Composite **Exhibit B**.)

      **B.**     **Sections 627.64194(4) and 641.513(5) of the Florida Statutes Do Not Apply To The Self-Funded ERISA Plan At Issue And Are ERISA preempted (Count V).**

Sections 641.513(5) and 627.64194(4) of the Florida Statutes do not apply to benefit claims arising from self-funded ERISA plans like the Plan at issue.  *FMC Corp. v. Holliday*, 498 U.S. 52, 54 (1990) ("The Plan is self-funded; it does not purchase an insurance policy from any

9

insurance company in order to satisfy its obligations to its participants."); *Lipof v. Fla. Power & Light Co.*, 558 So. 2d 1067, 1068 (Fla. 4th DCA 1990) ("Self-insurance is not considered a 'policy' of insurance."). "A self-insured plan is one in which benefits are paid from contributions supplied by employers without outside insurance." *Koenig v. Aetna Life Ins. Co.*, No. 4:13-CV-00359, 2015 WL 6473351, at *8 n.7 (S.D. Tex. Oct. 27, 2015) (citation omitted). "[A] self-insured plan is not an insurance policy . . . ." *In re Johnson*, 439 B.R. 416, 434 (Bankr. E.D. Mich. 2010).

The ERISA plans at issue in *FMC Corp.* and *Hudgens* were self-funded plans, meaning that they do "not purchase an insurance policy from any insurance company in order to satisfy [their] obligations to [their] participants." *FMC Corp.*, 498 U.S. at 54. In other words, self-insured or *self-funded* ERISA plans, by definition, are not an insurance policy. Plaintiff's state law causes of action based on Florida's statutes specifically regulating insurance are conflict preempted notwithstanding ERISA's so-called "Savings Clause," which provides that, "nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities." ERISA § 514(b)(2)(A), 29 U.S.C. § 1144(b)(2)(A). As a threshold matter, ERISA's Savings Clause does not apply to any claims made from self-funded plans, because such plans do not involve "insurance". *See Hudgens*, 742 F.3d at 1324. ERISA's so-called "Deemer Clause" clarifies that the benefit plan itself is not deemed to be an insurer for purposes of state laws that regulate insurance. ERISA § 514(b)(2)(B), 29 U.S.C. § 1144(b)(2)(B). Thus, the state law's application to the Plan is not a regulation of insurance, and the Savings Clause does not shield the state law from preemption. *See FMC Corp.*, 498 U.S. at 64 ("Our interpretation of the deemer clause makes clear that . . . . if the plan is uninsured [or self-funded], the State may not regulate it."); *Hudgens*, 742 F.3d at

1333–34, n.18 (where provisions of Georgia's prompt pay laws would extend "to claims made under self-funded ERISA plans . . . . the Deemer Clause applies to preempt" those provisions).

### C. Plaintiff Fails to Allege Exhaustion of the Plan's Administrative Remedies.

It is well-established in the Eleventh Circuit that ERISA plaintiffs must allege exhaustion of their administrative remedies under the ERISA-governed plan before they may bring suit. *See Counts v. Am. Gen. Life & Accident Ins. Co.,* 111 F.3d 105, 108 (11th Cir. 1997) ("The law is clear in this circuit that plaintiffs in ERISA actions must exhaust available administrative remedies before suing in federal court."). In *Springer v. Wal-Mart Associate's Group Health Plan*, the Eleventh Circuit held that "the district court plainly abused its discretion in not dismissing" the plaintiff's suit due to a failure to exhaust the ERISA plan's internal appeals process. 908 F.2d 897, 899 (11th Cir. 1990). The court reasoned that "[t]he very premise of the exhaustion requirement . . . is that the right to seek federal court review matures only after that requirement has been appropriately satisfied or otherwise excused." *Id*. at 900. Courts have therefore strictly enforced the exhaustion of administrative remedies requirement against plaintiffs bringing ERISA claims, and such compliance is rarely excused. *See Perrino v. S. Bell Tel. & Tel. Co.,* 209 F.3d 1309, 1315 (11th Cir. 2000) (holding that "we strictly enforce an exhaustion requirement on plaintiffs bringing ERISA claims").

The Plan here provides that "[c]ompleting the claim and appeals procedure is ***mandatory*** for resolving every claim and dispute arising under the employee health benefits." [**Ex. A** at 445 (emphasis added).] The Plan clearly contemplates that such completion of the claim and appeals procedure must occur before legal action is instituted. [*See id.* (referring to "any legal action brought *after* you have exhausted the claim and appeals procedure" (emphasis added)); *id.* at 447

11

("If you have a claim for benefits that is denied or ignored, in whole or in part, you may file suit in state or federal court *after* exhausting the Plan's claims procedure." (emphasis added)).]

Plaintiff pleads only the satisfaction of all conditions precedent to the United Defendants' performance of statutory and contractual obligations. [Compl., ECF No. 1-3, ¶¶ 77, 91, 106.] The Complaint lacks any additional allegation—whether conclusory or otherwise—that Plaintiff submitted its benefits claims through the Plan's claim and appeals procedure and that the procedure has concluded. Without those allegations, dismissal of this action is warranted.

### D. Plaintiff's State Law Causes of Action are Not Sufficiently Pled.

#### 1. *Breaches of implied-in-fact contracts  (Counts I and II)*

Under Florida law, "[a] contract implied in fact is one form of an enforceable contract; it is based on a tacit promise, one that is inferred in whole or in part from the parties' conduct[.]" *Commerce P'ship 8098 Ltd. P'ship v. Equity Consulting Co., Inc.*, 695 So. 2d 383, 385 (Fla. 4th DCA 1997); *RMP Enterprises, LLC v. Conn. Gen. Life Ins. Co.*, No. 9:18-CV-80171, 2018 WL 6110998, at *8 (S.D. Fla. Nov. 21, 2018). A contract implied-in-fact "must arise from the interaction of the parties or their agents." *Commerce P'ship*, 695 So. 2d at 386. This is because a contract implied-in-fact "rest[s] upon the assent of the parties." *Id.* Additionally, "essential terms" of a contract—whether written or oral—"must be sufficiently specified." *Disa v. Ashley Furniture Indus., Inc.*, 131 F. Supp. 3d 1316, 1321 (M.D. Fla. 2015). One of those terms is the contract price. *West v. Chrisman*, 518 B.R. 655, 662 (Bank. M.D. Fla. 2014).

##### a. *Contract based on reimbursement at shared savings rates*

Count I alleges that the Parties entered into an implied contract whereby the United Defendants became obligated to pay for services that Plaintiff provided to the Member "at applicable TRPN shared savings rates." [Compl., ECF No. 1-3, ¶ 88.] Plaintiff supports this

cause of action on the basis that the United Defendants had "issued a member ID card to Patient [Member] representing that Defendants recognize shared savings networks . . . ." [*Id.* ¶ 85.a.] This allegation is inadequate to show that the United Defendants and *Plaintiff* interacted such that the United Defendants assented to the terms agreed to between the non-party TRNP and Plaintiff or any specific terms with Plaintiff. *See Commerce P'ship*, 695 So. 2d at 386. Moreover, the United Defendants simply acknowledging the shared savings networks' existence does not necessarily equate to them going as far as assenting to pay any particular compensation rate set within the network—none of which are alleged in the Complaint. *See Disa*, 131 F. Supp. 3d at 1321.

Plaintiff asserts that the United Defendants acknowledged their obligation to pay TRPN rates in light of the fact that they: (i) "approved" of the Member presenting to the surgery center and hospital on certain dates; (ii) "preauthorized" Plaintiff to provide medical services to the Member as part of three of the five surgeries in question; and (iii) "approved" of Plaintiff rendering those services. [Compl., ECF No. 1-3, ¶ 85.b.-d.] In other words, Plaintiff seems to rely upon the United Defendants' alleged pre-service verification process. But again, these allegations are insufficient to show that the United Defendants assented to paying a specific compensation rate—an essential term of the purported contract Plaintiff is seeking to enforce. *See West*, 518 B.R. at 662.

Indeed, "[c]ourts across the country agree that an insurer's verification of coverage is not a promise to pay a certain amount." *RMP Enterprises, LLC v. Conn. Gen. Life Ins. Co.*, 2018 WL 6110998, at *8 (S.D. Fla. Nov. 21, 2018). For example, in *RMP Enterprises*, this Court held that an insurance company's "alleged oral verification of coverage [wa]s insufficient to form the basis of any agreement to pay—whether implied or express." *Id.* As support, the Court

13

acknowledged that "Plaintiffs' attempt to construe Cigna's alleged oral verification as a contractual agreement to pay Plaintiffs' 'usual and customary charges' has been conclusively rejected by courts nationwide." *Id.* The instant claim is no different. Plaintiff is attempting to construe the United Defendants' alleged approvals and preauthorization as a contractual agreement to be bound by the rates set by third-party networks.

Plaintiff further alleges that Defendants "tacitly agreed to pay Plaintiff the applicable TRPN shared saving rates." [Compl., ECF No. 1-3, ¶ 85.e.] This conclusory allegation accomplishes nothing more than reciting an element of breach of contract implied in fact—which is insufficient to prevent the dismissal of Plaintiff's Complaint. *See Commerce P'ship*, 695 So. 2d at 385; *Hill*, 461 F. Supp. 3d at 1236.

Plaintiff further alleges that the United Defendants acknowledged their obligation and responsibility for payment at applicable TRPN shared savings rates by: (i) issuing remittance notices to Plaintiff acknowledging United Defendants' agreement to pay Plaintiff for its services at" the rates; and (ii) misrepresenting, by use of a certain claims adjustment code on the remittance notices, that the United Defendants were making payment at the applicable TRPN rates. [Compl., ECF No. 1-3, ¶ 88.] Even if these allegations are true, such ***after-the-fact*** conduct does not demonstrate that, at the time the services in question were rendered, the United Defendants agreed to pay Plaintiff at specific shared savings rates. *Cf. Business Specialists, Inc. v. Land & Sea Petroleum, Inc.*, 25 So. 3d 693, 695 (Fla. 4th DCA 2010) ("[A] meeting of the minds of the parties on all essential elements is a prerequisite to the existence of an enforceable contract . . . . When essential terms are left open for negotiation, there is no meeting of the minds." (citations omitted)).

14

### b. *Contract based on reimbursement at fair market value*

Count II alleges that the Parties entered into an implied contract whereby the United Defendants became obligated to pay the fair market value or "reasonable value" of the services Plaintiff had provided to the Member. [Compl., ECF No. 1-3, ¶¶ 100, 105, 110.] As support, Plaintiff assert allegations similar to those supporting Count I. [*Id.* ¶ 102.] Accordingly, Count II fails to demonstrate the existence of an enforceable contract for the same reasons set forth above; to wit: (i) the alleged coverage verification process does not reflect any promise on the United Defendants' part to pay a certain amount for Plaintiff's services; and (ii) the United Defendants' conduct after the rendition of services cannot serve as a basis for demonstrating the United Defendants' agreement to pay the reasonable value of Plaintiff's services at the time those services were provided. In fact, essential contract terms must be "sufficiently definite." *Kolodziej v. Mason*, 774 F.3d 736, 744 (11th Cir. 2014). Count II "seeks compensatory damages . . . in an amount equal to the difference between the amounts Defendants paid to Plaintiff for the Claims and the fair market value of the medical services underlying the Claims[.]" [Compl., ECF No. 1-3, ¶ 110.] But it otherwise fails to articulate, by amount, the "fair market value" that Plaintiff is relying upon in its calculation of what it expected to receive as compensation from the United Defendants.

### 2. *Unjust enrichment/breach of implied-in-law contract (Count III)*

"To state a claim for unjust enrichment and/or contract implied in law," a plaintiff must allege three elements: "(1) plaintiff conferred a benefit upon the defendant, who has knowledge of that benefit; (2) defendant accepts and retains the conferred benefit; and (3) under the circumstances, it would be inequitable for the defendant to retain the benefit without paying for it." *Sport & Wheat, CPA, PA v. ServisFirst Bank, Inc.*, --- F.3d ---, 2020 WL 4882416, at * (S.D.

Fla. Aug. 17, 2020) (citation omitted). "To satisfy the first element, 'the plaintiff must *directly* confer a benefit to the defendant.'" *Id.* (quoting *Kopel v. Kopel*, 229 So. 3d 812, 818 (Fla. 2017)).

Plaintiff alleges that it conferred a direct benefit on the United Defendants by providing medical services a Member of the United Defendants. [Compl., ECF No. 1-3, ¶ 112.] As a matter of law, healthcare providers that, like Plaintiff, provide treatment or services to a person who has health insurance do not confer a direct benefit on an insurer by providing medical services to the insured. *See Hialeah Physicians Care, LLC v. Conn. Gen. Life Ins. Co.*, No. 13-21895-CIV, 2013 WL 3819617, at *4 (S.D. Fla. July 22, 2013); *Peacock Med. Lab, LLC v. UnitedHealth Grp., Inc.*, No. 14-81271-CV, 2015 WL 2198470, at *5 (S.D. Fla. May 11, 2015); *Adventist Health Sys./Sunbelt Inc. v. Med. Sav. Ins. Co.*, No. 6:03-CV-1121, 2004 WL 6225293, at *6 (M.D. Fla. Mar. 8, 2004). The benefit conferred has to be direct, "not indirect or attenuated as would be any putative 'benefit' conferred on an insurer by treating its insureds." *Adventist Health Sys./Sunbelt Inc.*, 2004 WL 6225293, at *6; *Johnson v. Catamaran Health Sols., LLC*, 687 F. App'x 825, 830 (11th Cir. 2017) (affirming dismissal of an unjust enrichment claim because the plaintiff's allegations did not show that plaintiff provided a "direct benefit" to the defendant); *City of Miami v. Citigroup Inc.*, 801 F.3d 1268, 1277-1278 (11th Cir. 2015) (dismissing unjust enrichment claim and acknowledging Florida case law requiring that the benefit be direct). Because any benefit conferred upon the United Defendants would have been, at best, "indirect or attenuated," Plaintiff has failed to alleged a cognizable cause of action for unjust enrichment or breach of implied-in-law contract.

### *3. Promissory Estoppel (Count IV)*

Plaintiff has failed to allege sufficient facts to state a valid cause of action for promissory estoppel. To state a cause of action for promissory estoppel, Plaintiff must allege three elements: "(1) a representation as to a material fact that is contrary to a later-asserted position, (2) reasonable reliance on that representation, and (3) a change in position detrimental to the party claiming estoppel caused by the representation and reliance thereon." *Columna, Inc. v. Cigna Health & Life Ins. Co.*, No. 19-80170-CIV-REINHART, 2019 WL 7899137, at *7 (S.D. Fla. Oct. 11, 2019). "Claims for promissory estoppel must be definite as to terms and time." *Hopkins Pontiac GMC, Inc. v. Ally Fin. Inc.*, 60 F. Supp. 3d 1252, 1261 (N.D. Fla. 2014).

In *Columna*, this Court held that a promissory estoppel claim was "too indefinite" in that it lacked allegations that an insurer's authorization to treat members "contained a representation as to precisely what services would be covered, how much payment would be made for those services, when payment would be made, or to whom payment would be made." 2019 WL 7899137, at *7. The same conclusion should be drawn here. Count IV is based on the allegations that the United Defendants preauthorized the specific medical services provided to the Member as part of the first, fourth, and fifth surgeries while also issuing a member ID card representing that the United Defendants "recognize shared savings networks." [Compl., ECF No. 1-3, ¶¶ 124-25.] However, Plaintiff does not allege what, if any, shared savings network rate the United Defendants or the issued member ID card represented would be applied in paying Plaintiff, when the United Defendants would pay Plaintiff, or whom the United Defendants would pay. Therefore, Count IV of the Complaint should be dismissed because, as in *Columna*, the allegations supporting it "are too indefinite to sustain [Plaintiff's] promissory estoppel claim." *See* 2019 WL 7899137, at *7.

17

**IV.     CONCLUSION**

For the foregoing reasons, the United Defendants respectfully request that this Court enter an order dismissing Plaintiff's Complaint and granting any further relief deemed just and proper.

Dated: January 22, 2021

                      Respectfully submitted,

                      **AKERMAN LLP**
                      Three Brickell City Centre
                      98 Southeast Seventh Street, Ste. 1100
                      Miami, Florida  33131
                      Telephone:  (305) 374-5600

                      By: /s/ *Gera R. Peoples, Esq.*
                          **Gera R. Peoples, Esq. (FBN 450022)**
                          gera.peoples@akerman.com
                          magda.cabra@akerman.com
                          **Ta'Ronce Stowes, Esq. (FBN 107421)**
                          taronce.stowes@akerman.com
                          magda.cabra@akerman.com

                      and

                      **Irene Bassel Frick, Esq. (FBN 158739)**
                      irene.bassel@akerman.com
                      nicole.emmett@akerman.com
                      **AKERMAN LLP**
                      401 East Jackson Street, Suite 1700
                      Tampa, Florida 33602
                      Telephone:  (813) 223-7333

                      *Counsel for Defendants*
                      *UnitedHealth Group Incorporated and*
                      *United HealthCare Services, Inc.*