**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

CASE NO. 21-CV-60023-AHS

VANGUARD PLASTIC SURGERY, PLLC d/b/a
VANGUARD AESTHETIC AND PLASTIC
SURGERY,

      Plaintiff,

vs.

UNITEDHEALTH GROUP INCORPORATED, a
foreign corporation, and UNITED
HEALTHCARE SERVICES, INC., a foreign
corporation,

      Defendants.
_____/

**PLAINTIFF'S RESPONSE AND INCORPORATED MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Pursuant to Local Rule 7.1(c), Plaintiff Vanguard Plastic Surgery, PLLC ("Plaintiff") responds in opposition to Defendants UnitedHealth Group Incorporated and United Healthcare Services, Inc.'s (collectively, "Defendants") Motion to Dismiss [DE 9] and states as follows:

**I.    INTRODUCTION**

Plaintiff has sued Defendants seeking appropriate compensation for medical services it provided to a patient ("Patient") who was a member of one of Defendants' health insurance plans (the "Plan"). Plaintiff brings its state law claims as a third-party healthcare provider based on its interactions with Defendants, independent of the terms of the Plan. Accordingly, its claims do not relate to an ERISA plan and thus are not preempted by ERISA. And because Plaintiff's claims are

not ERISA claims, Plaintiff was not required to exhaust administrative remedies under the Plan prior to bringing this lawsuit.

Further, each count in Plaintiff's Complaint states a claim for relief. The Complaint contains sufficient facts to support creation of implied-in-fact contracts between the parties based on their conduct, relationship, and the surrounding circumstances, the totality of which demonstrates an understanding between the parties that Defendants would reimburse Plaintiff for the services it provided to Patient. The fact that the parties did not expressly agree to a definite and specific reimbursement rate makes no difference, as the law is clear that it is up to the finder of fact to supply this term (and the cases Defendants cite to the contrary all concern *express* contracts, not implied). As it concerns Plaintiff's unjust enrichment claim, numerous district courts in Florida have found that third-party providers confer a benefit on insurers sufficient to state such a claim by providing medical services to the insurers' members. Likewise, courts have found that conduct like that of Defendants, as set forth in the Complaint, is sufficient to support a claim for promissory estoppel. Accordingly, Defendants' Motion to Dismiss should be denied.

## II.   BACKGROUND

Plaintiff provided medical services to Patient as part of five different complex surgeries relating to Patient's diagnosis with Lynch Syndrome and associated increased risk of breast cancer. Compl. ¶ 2. Three of these surgeries were preauthorized by Defendants, and the other two were performed on an emergency basis. *Id.* ¶ 3. Plaintiff provided all five surgeries with the understanding and expectation that Defendants would reimburse Plaintiff for the services it provided to Patient at rates equal to either the Three Rivers Provider Network ("TRPN") shared savings rate or the fair market or reasonable value of Plaintiff's services based on: Defendants' preauthorization of the services; Defendants' representations on the member ID card they issued

to Patient; Defendants' representations on the remittance notices they sent to Plaintiff; the course of dealing and course of performance between the parties; and the requirements of Florida law. *Id.* ¶ 4. Defendants acknowledged their agreement and responsibility to reimburse Plaintiff for those surgeries by paying the claims Plaintiff submitted for each surgery, albeit at unreasonably low rates. *Id.* ¶¶ 11–12. Plaintiff brings multiple state law claims based on these facts, including: breach of implied-in-fact contracts based on a shared savings network agreement and/or the reasonable value of the services (Counts I and II); unjust enrichment/breach of implied-in-law contract (Count III); and promissory estoppel (Count IV).[1]

### III.   ARGUMENT

**A. Plaintiff's Claims Do Not "Relate to" an ERISA Plan and Thus Are Not Preempted.**

Defendants' argument that Plaintiff's state law claims are defensively preempted is inconsistent with both the law and Congress's purpose in enacting ERISA. Under established precedent, Plaintiff's claims against Defendants are too tenuous, remote, or peripheral to the Plan to "relate to" the Plan. And a finding that Plaintiff's claims are defensively preempted would hinder ERISA's objective of protecting beneficiaries like Patient because it would subject them to greater out-of-pocket costs, surprise medical bills, potential denial of care, and other adverse effects that would make it more difficult for them to obtain medical treatment. If Defendants' position were adopted, third-party providers like Plaintiff—who were not parties to the "ERISA bargain"—would be left without any practical recourse when insurers like Defendants refuse to pay them a reasonable value for the services provided to beneficiaries. ERISA therefore does not preempt Plaintiff's state law claims.

---

[1] Plaintiff agrees to voluntarily withdraw its claim alleging violations of Sections 627.64194 & 641.513, Florida Statutes, set forth in Count V of its Complaint, and thus does not oppose Defendants' Motion seeking dismissal of Count V.

A state law claim "relates to" an ERISA plan for purposes of preemption if it has an impermissible connection with or reference to an ERISA plan. *Rutledge v. Pharm. Care Mgmt. Ass'n*, -- U.S. --, 141 S. Ct. 474, 480 (Dec. 10, 2020) (citing *Egelhoff v. Egelhoff*, 532 U.S. 141, 147 (2001)). But not every claim involving an ERISA plan "relates to" ERISA. *Id.* "That is especially so if a law merely affects costs" of benefits under the plan. *Id.* As this Court found just a few months ago in ruling against another United entity on its motion to dismiss,[2] "a line of cases [does], indeed, limit the otherwise broad definition of 'relates to' in certain circumstances. In this line of case law, courts have been prone to cut off the broad application of the definition of 'relates to' when the state-law claim is 'too tenuous, remote, or peripheral' to the plan." *S. Broward Hosp. Dist. v. ELAP Services, LLC*, 20-CV-61007, 2020 WL 7074645, at *9 (S.D. Fla. Dec. 3, 2020) (citing *Lordmann Enters., Inc. v. Equicor, Inc.*, 32 F.3d 1529, 1533 (11th Cir. 1994)). "In fact, 'courts have, with near unanimity, found that independent state law claims of third party healthcare providers are not preempted by ERISA.'" *Id.* at *9 (quoting *Surgery Ctr. of Viera, LLC v. UnitedHealthcare, Inc.*, 465 F. Supp. 3d 1211, 1221 (M.D. Fla. 2020)); *accord Sarasota Cnty. Pub. Hosp. Bd. v. Blue Cross & Blue Shield of Fla., Inc.*, 8:18-CV-2873-T-23SPF, 2021 WL 37605, at *4 (M.D. Fla. Jan. 5, 2021) ("[S]tate law claims brought by health care providers against plan insurers have too remote an effect on ERISA plans to be preempted by the Act.") (quoting *Boca Raton Cmty. Hosp., Inc. v. v. Great-W. Healthcare of Fla.*, 2008 WL 728538, at *6 (S.D. Fla. 2008)).

This line of cases is consistent with ERISA's objectives. *See Rutledge*, 141 S. Ct. at 480 (quoting *Cal. Div. of Labor Standards Enforcement v. Dillingham Constr., N. A., Inc.*, 519 U.S.

---

[2] That motion to dismiss was filed by the same attorneys representing Defendants in this case. *See generally S. Broward Hosp. Dist. v. ELAP Services, LLC*, 20-CV-61007, 2020 WL 7074645, at *9 (S.D. Fla. Dec. 3, 2020).

316, 325 (1997)) (in determining whether a state law claim relates to ERISA, courts "consider[] ERISA's objectives 'as a guide to the scope of the state law that Congress understood would survive.'"). "ERISA was enacted 'to promote the interests of employees and their beneficiaries in employee benefit plans.'" *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 113 (1989) (quoting *Shaw v. Delta Airlines, Inc.*, 463 U.S. 85, 90 (1983)). When considering this objective and the economic realities of the healthcare industry, it is clear that "preemption [of third-party provider claims] does not serve Congress's purpose for ERISA" because it "would defeat rather than promote [ERISA's] goal" of protecting employees and beneficiaries of ERISA plans. *Surgery Ctr. of Viera, LLC*, 465 F. Supp. 3d at 1220 (quoting *Lordmann Enterprises, Inc. v. Equicor, Inc.*, 32 F.3d 1529, 1533 (11th Cir. 1994)) (alteration in original).

> The "commercial realities" of the health care industry require that health care providers be able to rely on insurers' representations as to coverage. If ERISA preempts their potential causes of action . . . , health care providers can no longer rely as freely and must either deny care or raise fees to protect themselves against the risk of noncoverage. In that event, the employees whom Congress sought to protect would find medical treatment more difficult to obtain. . . .
>
> . . . Moreover, a health care provider's claim against a provider of insurance under the plan affects the relationship between the principal ERISA entities at best only indirectly. Finally, health care providers were not parties to the ERISA "bargain." When employers and employees gave up state law causes of action because of ERISA, they received federal causes of action under ERISA in exchange. On the other hand, ERISA does not provide a cause of action for aggrieved health care providers that treat ERISA participants.

*Id.* (quoting *Lordmann*, 32 F.3d at 1533–34). These considerations are even stronger in a situation like this, where the Plan prohibits a provider like Plaintiff from bringing claims as an assignee of benefits under the Plan—meaning Plaintiff's only recourse would be to seek payment from Patient, despite Defendants having agreed, impliedly or otherwise, to be responsible for same. *See* Plan, DE 9-1 at Page 83 of 149 [Plan page 76].

Like the plaintiffs in the cases above, Plaintiff is an out-of-network provider and is not seeking payment under the Plan itself. Rather, Plaintiff claims are based on its interactions with Defendants independent of the Plan, and Plaintiff brings those claims in its own right and on its own behalf, not on behalf of Patient. Plaintiff's claims do not ask the Court to interpret or rely on any provisions of the Plan, but instead are based on Defendants' refusal to pay Plaintiff a reasonable reimbursement rate for its services independent of the Plan's terms. As the Supreme Court recently clarified, state law claims like these, which merely concern reimbursement rates, do "not require plans to provide any particular benefit to any particular beneficiary in any particular way," but instead "simply establish[] a floor for the cost of the benefits that plans choose to provide." *Rutledge*, 141 S. Ct. at 482. Such claims thus are not preempted. *See id.*

In short, in cases like this, "in which the Plaintiff is an out-of-network or 'non-participating' healthcare provider and not seeking payment under the Plan, the state law claims do not 'relate to' the ERISA plan. Accordingly, United's Motion to Dismiss [Plaintiff's] state law claims as defensively preempted by ERISA is due to be denied." *Surgery Ctr. of Viera, LLC*, 465 F. Supp. 3d at 1223."

**B. Plaintiff Need Not Exhaust Administrative Remedies Because It Does Not Seek ERISA Plan Benefits.**

Plaintiff was not required to exhaust administrative remedies because it is not seeking benefits pursuant to ERISA. The requirement that plaintiffs exhaust administrative remedies applies to ERISA claims. *See Springer v. Wal-Mart Associates' Group Health Plan*, 908 F.2d 897, 899 (11th Cir. 1990). It does not apply where, as here, a third-party provider brings state law claims independent of any ERISA plan and those claims are thus not preempted. *Cf. Torrent & Ramos, M.D., P.A. v. Neighborhood Health P'ship, Inc.*, 05-21668-CIV, 2005 WL 6358852, at *5 (S.D. Fla. Sept. 2, 2005) (provider was required to exhaust administrative remedies because claims were

brought as an assignee under ERISA plan and were therefore preempted). Defendants' entire argument on this issue incorrectly assumes that Plaintiff's claims are ERISA claims. *See* Defs.' Mot. to Dismiss [DE 9] at 2 ("[A]ssuming *arguendo* that Plaintiff's causes of action are construed as asserting claims for ERISA plan benefits, such benefit claims fail because Plaintiff has no alleged exhaustion of the Plan's administrative remedies."). Because this incorrect assumption is necessary to Defendants' argument, it should be rejected.

**C. Counts I and II State Claims for Breach of Implied-in-Fact Contracts.**

1. Plaintiff Is Not Required to Plead Agreement to a "Particular Compensation Rate" to State a Claim for Breach of Implied-in-Fact Contract.

Plaintiff properly may seek damages for breach of implied-in-fact contract, regardless of whether the parties agreed to a specific contract rate—as set forth in one of the very cases that Defendants cite:

> Common examples of contracts implied in fact are where a person performs services at another's request, or "where services are rendered by one person for another without his expressed request, but with his knowledge, and under circumstances" fairly raising the presumption that the parties understood and intended that compensation was to be paid. In these circumstances, ***the law implies the promise to pay a reasonable amount for the services***.

*Commerce P'ship 8098 Ltd. P'ship v. Equity Contracting Co., Inc.*, 695 So. 2d 383, 386 (Fla. 4th DCA 1997) (emphasis added); *accord Baycare Health Sys., Inc. v. Med. Sav. Ins. Co.*, 8:07-CV-1222-T-27TGW, 2008 WL 792061, at *8 (M.D. Fla. Mar. 25, 2008) (citing *Eskra v. Provident Life & Accident Ins. Co.*, 125 F.3d 1406, 1413 (11th Cir.1997)) ("[W]here the existence of the implied-in-fact contract is clear, but the terms of compensation are unspecified, a jury is empowered to award a reasonable amount of compensation.").

Defendants' arguments to the contrary misapprehend the distinction between express and implied-in-fact contracts. A contract implied-in-fact *"is inferred in whole or in part from the parties' conduct, not solely from their words." Commerce P'ship*, 695 So. 2d at 385.

> Where an agreement is arrived at by words, oral or written, the contract is said to be "express." A contract implied in fact is not put into promissory words with sufficient clarity, so a fact finder must examine and interpret the parties' conduct to give definition to their unspoken agreement.

*Id.* at 385 (citations omitted). In other words, "[a] contract based on the parties' words is characterized as express, whereas, a contract based on the parties' conduct is said to be implied in fact." *Baron v. Osman*, 39 So. 3d 449, 451 (Fla. 5th DCA 2010). The cases Defendants cite as "support" of their request for dismissal concern claims for breach of ***express*** contracts. *See Disa v. Ashley Furniture Indust., Inc.*, 131 F Supp. 3d 1316, 1320 (M.D. Fla. 2015) (claims for breach of express written and oral employment contracts); *West v. Chrisman*, 518 B.R. 655, 662 (Bank. M.D. Fla. 2014) (claim for breach of express fee agreement); *Bus. Specialists, Inc. v. Land & Sea Petroleum, Inc.*, 25 So. 3d 693, 694 (Fla. 4th DCA 2010) (claim for breach of express marketing agreement for sale business and land). But Plaintiff, of course, brings its claims based on implied-in-fact contracts—created by the parties' conduct, relationship, and the surrounding circumstances—rather than any express contract. Accordingly, it is up to the fact finder to "give definition to [the parties'] unspoken agreement" as to the contract price. *Commerce P'ship 8098 Ltd. P'ship*, 695 So. 2d at 385.

2. The Parties' Conduct Is Sufficient to Form an Implied-in-Fact Contract.

As set forth above, to establish an implied-in-fact contract, Plaintiff must show that it provided services to Patient with Defendants' "knowledge, and under circumstances fairly raising the presumption that [Defendants] understood and intended that compensation was to be paid." *Commerce P'ship*, 695 So. 2d at 386. A claim for breach of an implied-in-fact contract requires

the plaintiff to show an "expectation of compensation." *Tooltrend, Inc. v. CMT Utensili, SRL*, 198 F.3d 802, 806 (11th Cir. 1999). "Contracts implied in fact are inferred from the facts and circumstances of the case." *Eskra v. Provident Life & Acc. Ins. Co.*, 125 F.3d 1406, 1413 (11th Cir. 1997). Again, common examples of contracts implied-in-fact are "where services are rendered by one person for another without [its] expressed request, but with [its] knowledge, and under circumstances fairly raising the presumption that the parties understood and intended that compensation was to be paid." *Surgery Ctr. of Viera, LLC v. Meritain Health, Inc.*, 619CV1694ORL40LRH, 2020 WL 7389987, at *13 (M.D. Fla. June 1, 2020), *report and recommendation adopted,* 619CV1694ORL40LRH, 2020 WL 7389447 (M.D. Fla. June 16, 2020) (quoting *Commerce P'ship*, 695 So. 2d at 386).

Plaintiff's Complaint contains sufficient facts supporting such a claim here. It alleges that: (1) Plaintiff provided medical services to Patient; (2) Defendants were aware that Plaintiff was providing those services to Patient and in fact authorized three of the surgeries; (3) Plaintiff billed Defendants for those medical services; (4) Defendants paid Plaintiff, but at a greatly reduced rate; and (5) Plaintiff is entitled to additional compensation for these medical services. *See* Compl., DE 1-3, ¶¶ 39, 47, 50, 83—95, 100–110. "[T]hese allegations, taken as true and read in the light most favorable to [Plaintiff], are sufficient to survive a motion to dismiss." *Surgery Ctr. of Viera, LLC v. Meritain Health, Inc.*, 2020 WL 7389987, at *13. They demonstrate a facially plausible claim that Plaintiff understood it had entered into an implied contract with Defendants, by virtue of the TRPN agreement, Defendants' approval of Plaintiff's provision of services, and Defendants' partial payment on the Claims; that Plaintiff expected to be compensated at the TRPN shared savings rate (based on Defendants' representations on the member ID card issued to Patient, which constitutes an "interaction" with providers like Plaintiff) and/or at a reasonable value in the

marketplace; and that Defendants understood and assented to an agreement to pay Plaintiff for its services. *See Surgery Ctr. of Viera, LLC v. Meritain Health, Inc.*, 2020 WL 7389987, at *13 (finding similar allegations sufficient to withstand a motion to dismiss); *cf. S. Broward Hosp. Dist. v. ELAP Services, LLC*, 20-CV-61007, 2020 WL 7074645, at *8 (S.D. Fla. Dec. 3, 2020) (denying motion to dismiss provider's claims based, in part, on representations by insurer on member ID cards). "This is enough at this early stage of the litigation." *Surgery Ctr. of Viera, LLC v. Meritain Health, Inc.*, 2020 WL 7389987, at *13; *see also Baycare Health Sys., Inc. v. Med. Sav. Ins. Co.*, 8:07-CV-1222-T-27TGW, 2008 WL 792061, at **7–8 (M.D. Fla. Mar. 25, 2008) (denying insurer's motion to dismiss out-of-network provider's implied-in-fact contract claim where provider alleged it provided medical services to insurer's members, the insurer confirmed the services were covered, and the insurer failed to pay the reasonable value of those services).

### D. Plaintiff Conferred a Direct Benefit on Defendants.

Plaintiff has sufficiently alleged a claim for unjust enrichment. The only element of the claim at issue in Defendants' Motion is the first element, i.e., whether Plaintiff conferred a benefit on Defendants. Plaintiff has satisfied that element by alleging that it provided "valuable medical services to Patient as part of the Surgeries" for which Defendants were "required by law to provide coverage," that "Defendants received the benefit of having their legal obligations to Patient discharged" when Plaintiff performed the Surgeries, and that "Defendants derive a direct benefit from Plaintiff's provision of medical services to their members, because it is through Plaintiff's provision of those services that Defendants fulfill their legal obligations to their members." (*See* Compl., DE 1-3, ¶¶ 112–116.)

The handful of cases upon which Defendants rely do not alter this conclusion. Other district courts in Florida have found that healthcare providers stated a claim for unjust enrichment based

on allegations that they provided services to the defendants' members for which the defendants were legally obligated to provide reimbursement. *Surgery Ctr. of Viera, LLC v. UnitedHealthcare, Inc.*, 465 F. Supp. 3d 1211, 1224 (M.D. Fla. 2020); *see also S. Broward Hosp. Dist. v. ELAP Services, LLC*, 20-CV-61007, 2020 WL 7074645, at *8 (S.D. Fla. Dec. 3, 2020) (denying motion to dismiss unjust enrichment claim where provider alleged it conferred benefit on defendants by providing defendants' members with medical services for which defendants were legally obligated to provide and pay); *Surgery Ctr. of Viera, LLC v. Cigna Health & Life Ins. Co.*, 619CV2110ORL22DCI, 2020 WL 686026, at *7 (M.D. Fla. Feb. 11, 2020) (same); *Reva, Inc. v. Humana Health Benefit Plan of La., Inc.*, Case No. 18-20136-Civ, 2018 WL 1701969 (S.D. Fla. Mar. 19, 2018) (same); *Nordt v. Colina Ins. Ltd.*, 17-21226-CIV, 2017 WL 4225550, at *8 (S.D. Fla. Sept. 22, 2017) (same); *Baycare Health Sys., Inc. v. Med. Sav. Ins. Co.*, 8:07-CV-1222-T-27TGW, 2008 WL 792061, at *10 (M.D. Fla. Mar. 25, 2008) (same).[3] This is consistent with Florida law. *See Merkle v. Health Options, Inc.*, 940 So. 2d 1190, 1199 (Fla. 4th DCA 2006) ("Merkle alleged facts sufficient to support its argument that Merkle's treatment of the subscribers conferred a benefit on the HMOs."); *Shands Teaching Hosp. & Clinics, Inc. v. Beech St. Corp.*, 899 So. 2d 1222, 1228 (Fla. 1st DCA 2005) ("Unisys argues that 'Shands cannot show an unjust enrichment, because its services to the State employees in exchange for State Plan benefits did nothing at all to enrich Unisys.' But this is a factual question not appropriately resolved on a motion to dismiss."). Accordingly, dismissal of Count III should be denied.

---

[3] Despite this, Defendants argue that providers do not confer a benefit on insurers by providing medical services to members "as a matter of law." While it is possible that Defendants are unaware of the orders in this district and others throughout Florida finding to the contrary, it seems unlikely, given that Defendants' counsel was also counsel of record in two of those cases. *See S. Broward Hosp. Dist.*, 2020 WL 7074645; *Surgery Ctr. of Viera, LLC*, 465 F. Supp. 3d at 1224.

**E. Defendants' Representations That It Would Pay Plaintiff Were Specific and Definite.**

The allegations of the Complaint are sufficient to support a promissory estoppel claim. It alleges Defendants authorized the specific medical services Plaintiff provided as part of the First, Third, and Fifth Surgeries and represented on Patient's member ID card that they recognize shared savings networks like TRPN for services provided to Patient, and that these actions constituted a promise by Defendants to pay Plaintiff for the Surgeries at the applicable TRPN shared savings rates. *See* Compl., DE 1-3, ¶¶ 124–127. It further alleges that Defendants acknowledged their promise to pay at the applicable TRPN shared savings rate on the remittance notices issued to Plaintiff. *See id.* at 128. This is sufficient at this stage of the litigation. *See Baptist Hosp. of Miami, Inc. v. Medica Healthcare Plans, Inc.*, 385 F. Supp. 3d 1289, 1294 (S.D. Fla. 2019) (finding out-of-network provider stated claim for promissory estoppel where it alleged insurer's confirmations and identification cards indicated insurer would be responsible to pay the claims); *Baycare Health Sys., Inc.*, 2008 WL 792061, at *11–12 (denying motion to dismiss out-of-network provider's promissory estoppel claim where provider alleged insurer made promises, in the form of conduct and statements, that it would pay provider its full billed charges for services provided to insurer's members).

## IV. CONCLUSION

Defendants' Motion to Dismiss should be denied. As this Court recently confirmed in a similar case, Plaintiff's state law claims—which it brings as a third-party healthcare provider, independent of the terms of the Plan—are too tenuous to "relate to" an ERISA plan. Additionally, a finding that Plaintiff's claims are preempted would undermine ERISA's objective of protecting employees and ERISA beneficiaries, and healthcare providers like Plaintiff (who were not parties to the "ERISA bargain") would be left without any meaningful recourse. Further, the Complaint

contains sufficient allegations supporting each of Plaintiff's state law claims; Defendants' arguments to the contrary are based on inapplicable or outdated case law.

WHEREFORE, Plaintiff respectfully requests entry of an Order denying Defendants' Motion to Dismiss, requiring Defendants to answer Plaintiff's Complaint, and providing such other and further relief as the Court deems just and proper.

Dated: February 12, 2021  
       Boca Raton, FL

Respectfully submitted,

By:  *s/ Richard P. Hermann, II*  
RICHARD P. HERMANN, II, ESQ  
Florida Bar No. 110019  
Primary E-Mail: rhermann@sbwlawfirm.com  
Secondary E-Mail: floridaservice@sbwh.law  
GENEVIEVE BAISDEN, ESQ.  
Florida Bar No. 100058  
Primary E-Mail:  gbaisden@sbwh.law  
Secondary E-Mail:  sfiero@sbwlawfirm.com  
SHAPIRO, BLASI, WASSERMAN & HERMANN, P.A.  
7777 Glades Road, Suite 400  
Boca Raton, Florida 33434  
Telephone:   (561) 477-7800  
Facsimile:    (561) 477-7722  

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on February 12, 2021, a true and correct copy of the foregoing document is being electronically filed with the Clerk of Court using CM/ECF and is being served via transmission of Notices of Electronic Filing generated by CM/ECF on all counsel of record identified in the Service List below.

*s/ Richard P. Hermann, II*  
RICHARD P. HERMANN, II, ESQ  
GENEVIEVE BAISDEN, ESQ.

## SERVICE LIST

**AKERMAN LLP**
**Gera R. Peoples, Esq.**
Florida Bar No. 450022
**Ta'Ronce Stowes, Esq.**
Florida Bar No. 107421
Three Brickell City Centre
98 Southeast Seventh Street, Ste. 1100
Miami, Florida 33131
Telephone: (305) 374-5600
gera.peoples@akerman.com
magda.cabra@akerman.com

taronce.stowes@akerman.com
magda.cabra@akerman.com

and

**AKERMAN LLP**
**Irene Bassel Frick, Esq.**
Florida Bar No. 0158739
401 East Jackson Street, Suite 1700
Tampa, Florida 33602
Telephone: (813) 223-7333
irene.basselfrick@akerman.com
nicole.emmett@akerman.com

*Counsel for Defendants*
UNITEDHEALTH GROUP INCORPORATED and
UNITED HEALTHCARE SERVICES, INC.