UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 21-CV-60023-AHS

VANGUARD PLASTIC SURGERY, PLLC,
d/b/a VANGUARD AESTHETIC AND
PLASTIC SURGERY,

v.

UNITEDHEALTH GROUP INCORPORATED,
a foreign a corporation, et al.,

    Defendants.
_____/

## DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS

    Defendants, UnitedHealth Group Incorporated and United HealthCare Services, Inc. (the "United Defendants"), pursuant to L.R. 7.1(c), hereby submit the following reply memorandum in support of their Motion to Dismiss [ECF No. 9]:

    Plaintiff Vanguard Plastic Surgery, PLLC is an out-of-network healthcare provider who seeks additional payment under state common law[1] for denied and partially paid benefit claims arising from multiple medical services it allegedly provided to a member-patient over the course of eighteen months.  However, Plaintiff must raise the challenges to the denial and payment of benefit claims as Employee Retirement and Income Security Act of 1974 ("ERISA") § 502(a)(1)(B) benefit claims.  As a result, Plaintiff's state-law causes of action are ERISA defensively preempted and must be dismissed on that basis.  Additionally, even if the state-law causes of action are converted to claims for ERISA benefits, they must be dismissed because Plaintiff has failed to exhaust the pre-suit administrative remedies set forth in the applicable health care benefit plan (the "Plan").  In the alternative, if the Court does not find ERISA preemption at this stage, Plaintiff's state-law causes of action must be dismissed for failing to sufficiently state causes of action under Florida common law.

---

[1] Plaintiff has conceded to dismissing its statutory claim in Count V.  [*See* ECF No. 15 at 3 n.1.]

I.   **ERISA DEFENSIVELY PREEMPTS COUNTS I-IV BECAUSE PLAINTIFF'S STATE-LAW CAUSES OF ACTION ARE BASED ON THE PLAN'S TERMS, SPECIFICALLY THE SHARED SAVINGS PROVISION.**

Plaintiff contends in its Response that its state-law causes of action for breach of contracts implied in fact and in law and for promissory estoppel are not preempted because they are based on the Parties' "interactions . . . independent of the Plan" and "do not ask the Court to interpret or rely on any provisions of the Plan." [ECF No. 15 at 6.] However, Plaintiff's argument ignores that its state-law causes of action are based on benefit claims that were either denied (i.e., not paid) or paid pursuant to the Plan and the application of the shared savings provision in the Plan. Each of Plaintiff's causes of action therefore requires this Court to interpret the shared savings provision, as well as other provisions for covered emergency and non-emergency services and out-of-network reimbursements. Specifically, in the terms of the Plan that describe coverage if a participant obtains services from a non-network provider like the Plaintiff, the Plan states in pertinent part:

> **Using Non-Network Providers**
> …
> When you obtain services from Non-Network Providers:
> …
> Depending on the geographic area and the services you receive, you *may* have access through UnitedHealthcare's *Shared Savings Program* to Non-Network Providers who have agreed to discount their charges for *Covered Health Services*. If you receive *Covered Health Services* from these Providers, the Coinsurance will remain the same as it is when you receive *Covered Health Services* from Non-Network Providers who have not agreed to discount their charges; however, the total that you owe *may* be less when you receive *Covered Health Services from Shared Savings Program providers* than from other Non-Network Providers because the Eligible Expense *may* be a lesser amount.

[ECF No. 1-4 at 75-76, 105 (emphasis supplied)].

The Plan then defines a "Shared Savings Program" as:

> A program in which UnitedHealthcare may obtain a discount to a Non-Network Provider's billed charges. This discount is usually based on a schedule previously agreed to by the Non-Network Provider. When this happens, you may experience lower out-of-pocket amounts. Plan Coinsurance and Deductibles would still apply to the reduced charge. Sometimes Plan provisions or administrative practices conflict with the scheduled rate, *and a different rate is determined by UnitedHealthcare*. In this case, the Non-Network Provider may bill you for the difference between the billed amount and *the rate determined by*

> *UnitedHealthcare*.  If this happens you should call the number on your medical ID Card.  Shared Savings Program providers are not Network Providers and are not credentialed by UnitedHealthcare.

[*Id.* at 24, 483 (emphasis supplied).]

The Plan also explains how benefit claims are administered and expressly states:

**Eligible Expenses**

The Company has delegated to UnitedHealthcare the initial ***discretion and authority to decide whether a treatment or supply is a covered health service and how the eligible expenses will be determined and otherwise covered under the plans***.

Eligible expenses are the amount ***UnitedHealthcare determines*** that UnitedHealthcare will pay for benefits. . . . For non-network benefits, you [the participant] are responsible for paying, directly to the non-network provider, any difference between the amount the provider bills you and the amount UnitedHealthcare will pay for eligible expenses.  ***Eligible expenses are determined solely in accordance with UnitedHealthcare's reimbursement policy guidelines, as described in the SPD***.

…

**For non-network benefits**, eligible expenses are based on either of the following:
- When *covered health services* are received from a non-network provider, eligible expenses are determined based on:
    - Negotiated rates agreed to by the non-network provider and either UnitedHealthcare or one of UnitedHealthcare's vendors, affiliates or subcontractors, ***at UnitedHealthcare's discretion***.
    - If rates have not been negotiated, then one of the following amounts:
        - Eligible expenses are determined based on 110% of the published rates allowed by the Centers for Medicare and Medicaid Services (CMS) for Medicare for the same or similar services within the geographic market . . .

[*Id.* at 462 (emphasis supplied)].

Thus, the very "existence of [the Plan] is essential to the law's operation" in this case such that Plaintiff's causes of action make reference, and thus "relate to," ERISA. *Rutledge v. Pharm. Care Mgmt. Ass'n*, 141 S. Ct. 474, 481 (2020).  This Court (or the factfinder) will need to examine the Plan's terms in order to confirm that the subject medical services were in fact "covered health services," and were "eligible expenses" allowable under UnitedHealthcare's reimbursement policy guidelines and only then, whether the expenses at issue were allowed

3

pursuant to the terms of the Plan.  Count I is predicated on a failure to pay benefit claims at rates allegedly negotiated with third-party Three Rivers Provider Network ("TRPN").  Clearly as to the benefit claims that were denied, the "rate" is not the disputed issue.  For the benefit claims that were allowed in part, once the factfinder examines whether indeed the services were "covered health services" and "eligible expenses" allowed under UnitedHealthcare's reimbursement policy guidelines, the Plan expressly provides the United Defendants discretion to pay expenses pursuant to negotiated rates.

The cases Plaintiff cites in support of its argument that its causes of action are not defensively preempted are distinguishable and inapplicable.  This Court's decision in *South Broward Hospital District v. ELAP Services, LLC* was based on allegations that there was no agreement with pre-negotiated reimbursement rates between the plaintiff and the defendants who are not affiliated with the United Defendants (contrary to the Plaintiff's statements in the Response), and therefore, this Court concluded that plaintiff was not seeking to enforce any term of the ERISA plan at issue.  2020 WL 7074645, at *21-22 (S.D. Fla. Dec. 3, 2020) (concluding that the plaintiff "does not ask the Court to interpret or rely on any provision of an ERISA plan whatsoever.").  However, here, not only is Plaintiff asking this Court to interpret or rely on the shared savings provision of the ERISA Plan, but Plaintiff also asks the Court to override the discretion granted to the United Defendants under that and related provisions and determine whether the denied benefit claims (i.e., claims not paid) should have been covered services under the Plan.  Plaintiff's state-law causes of action are not independent ERISA claims because Plaintiff's causes of action directly relate to the Plan.  For the benefit claims that were denied, Plaintiff's causes of action require reference to the Plan to evaluate whether the benefit claims were for "covered health services" and are "eligible expenses" allowed under UnitedHealthcare's policy guidelines.  For the benefit claims allowed at a lower rate, the Plaintiff would have no basis to assert its claims based on the shared savings network—much less expect any payment from the United Defendants for the care of one of Plaintiff's patients—without the term in the Plan expressly allowing the United Defendants to exercise discretion and pay pursuant the Shared Savings Program as defined in the Plan.

Additionally, *ELAP Services*, as well as *Lordmann Enterprises, Inc. v. Equicor, Inc.*, 332 F.2d 1529, 1533-34 (11th Cir. 1994), involved allegations that defendants falsely mispresented to a provider the insured's coverage in order to induce the provider to provide services.  No such

4

allegations are made here. *Sarasota County Public Hospital Board v. Blue Cross & Blue Shield of Florida, Inc.*, 2021 WL 37605 (M.D. Fla. Jan. 5, 2021) is also inapplicable in that it involved a dispute over the provider participation agreements and not the ERISA plans. Further, *Sarasota County* was decided on a motion for summary judgment—not a motion to dismiss, as in this case. *Boca Raton Community Hospital, Inc. v. Great-West Healthcare of Florida* likewise was a summary judgment case and involved neither a motion to dismiss nor a dispute related to ERISA plans; thus, it too is inapplicable here. 2008 WL 728538, at * 7 (S.D. Fla. 2008). Unlike the cases Plaintiff cites, the claims here relate to the ERISA Plan and are therefore preempted.

## II. FAILURE TO EXHAUST THE PLAN'S ADMINISTRATIVE REMEDIES WARRANTS DISMISSAL

Plaintiff argues that it was not required to exhaust any administrative remedies because it did not seek ERISA plan benefits. [ECF No. 15 at 6.] However, as demonstrated above and in the United Defendants' Motion to Dismiss, Plaintiff is seeking to enforce benefit claims that exist only because of the Plan and are thus "related to" that Plan. Accordingly, dismissal is warranted because Plaintiff has not sufficiently alleged the requisite exhaustion of the Plan's pre-suit claim and appeals procedure.

## III. COUNTS I-IV ARE INSUFFICIENTLY PLED AS A MATTER OF LAW

### A. Breach of Implied-In-Fact Contracts (Counts I-II)

1. *Plaintiff has failed to allege sufficient facts showing that the Parties assented to the essential terms to state a cause of action for breach of implied-in-fact contracts.*

Because "[i]mplied-in-fact contracts require the assent of the parties," *State Farm Mut. Auto. Ins. v. Universal Atlas Cement Co.*, 406 So. 2d 1184, 1188 (Fla. 1st DCA 1981), the Court must consider whether the Plaintiff alleges facts showing that there was mutual assent of the Parties. Plaintiff attempts to assert an implied-in-fact contract cause of action based on the shared savings network negotiated rates under a contract between non-party TRPN and the United Defendants. However, Plaintiff does not allege any facts showing that the United Defendants assented to any shared savings rates or market rate for the medical services allegedly provided by the Plaintiff.

> 2. *Contrary to Plaintiff's argument, the Parties' conduct as alleged clearly shows that there was no implied contract-in-fact between the Parties.*

Plaintiff argues that an implied-in-fact contract arose between the Parties by the United Defendants' pre-authorization of medical services provided to the member-patient, the partial payment of the benefit claims, and representations concerning shared savings on the face of the member's ID card. However, these arguments fail because Plaintiff's allegations taken as a whole do not satisfy the governing standard that "[a] contract implied in fact is one form of an enforceable contract; it is based on a tacit promise, one that is inferred in whole or in part from the parties' conduct, not solely from their words." *Commerce P'ship 8098 Ltd. P'ship v. Equity Contracting Co.*, 695 So. 2d 383, 386 (4th DCA 1997). Plaintiff has not alleged a single fact to support that there was a tacit promise inferable in whole or in part from Plaintiff's and the United Defendants' conduct that either Untied Defendant promised to pay the TRPN shared savings rates.

First, Plaintiff does not challenge this Court's prior decisions that a pre-service verification process like the one Plaintiff references in its Compliant cannot form the basis of an implied agreement to pay an out-of-network medical provider. [*See* ECF No. 9 at 13-14 (quoting *RMP Enters., LLC v. Conn. Gen. Life Ins. Co.*, 2018 WL 6110998, at *8 (S.D. Fla. Nov. 21, 2018)).] Second, the partial payment and the non-payment (i.e., denial) of the benefit claims in question show that the United Defendants did not agree to pay for the medical services at either any TRPN shared savings rate or some other amorphous rate. In fact, based on Plaintiff's allegations, the United Defendants did not reimburse at an agreed rate between the Parties or cover all the benefit claims ***for a year-and-a-half***—the period of time relevant to this matter. [ECF No. 1-3 at ¶¶ 38-51.] These facts are comparable to *Peacock Medical Lab, LLC v. UnitedHealth Group., Inc.*, where this Court dismissed an implied contract claim upon determining that the parties' assent was not established by allegations that the defendants "made payments either inconsistently or not at all." 2015 WL 2198470, at *5 (S.D. Fla. May 11, 2015). Such allegations actually indicate the opposite: that there was no tacit agreement between the parties. Further, the allegations that Plaintiff was not paid at the rates expected by Plaintiff over the year-and-a-half shows that the United Defendants acted consistently with the terms of the Plan, which grant the United Defendants discretion to choose which rate to apply when paying out-of-network medical providers, like Plaintiff. [*See, e.g.*, ECF No. 9, Ex. A at 104-05

("Sometimes Plan provisions or administrative practices conflict with the scheduled rate [under a Shared Savings Program], and *a different rate is determined by UnitedHealthcare*.  In this case the Non-Network Provider may bill you for the difference between the billed amount and the rate *determined by UnitedHealthcare*." (emphasis supplied)).]

Last, Plaintiff attempts to rely on the United Defendant's member ID card bearing certain "representations." [ECF No. 15 at 9.]  However, Plaintiff fails to identify the specific supporting "representations" on the ID card. Specifically, the Response [*id.* (citing ECF No. 1-3 at ¶ 85)] cites the Complaint's reference to an alleged "member ID card to Patient representing that Defendants *recognize shared savings networks, like TRPN* . . . ." [ECF No. 1-3 at ¶ 85.a. (emphasis supplied).]   But the card since produced to the United Defendants[2] contains no reference specifically to TRPN.  [*See* **Ex. A**.]  While it appears to make reference to "shared savings [logo] First Health Network" [*id.*], "unwarranted deductions of fact are not admitted as true."  *Berry v. Coleman*, 172 F. App'x 929, 932 (11th Cir. 2006). Here, it is unreasonable to infer that the reference to shared savings is intended to convey that the United Defendants recognize the rates of any shared savings network beyond the particular network expressly stated on the face of the subject member ID card.  More to this point, Plaintiff's reliance on *ELAP Services*' analysis of representations on member ID cards is misplaced because the content of the ID cards at issue in that case was pertinent to the Court's assessment of putative claims members' claims under the Florida Deceptive and Unfair Trade Practices Act.  Counts I and II should therefore be dismissed.

      **B.**    **Unjust Enrichment/Breach of Implied-In-Law Contract (Count III)**

            *1.*    *Plaintiff's Unjust Enrichment Cause of Action Fails Because Plaintiff Failed to Allege Any Facts Showing Any Direct Benefit Conferred to the United Defendants.*

A provider like Plaintiff ***does not*** confer a benefit on an insurer when it renders medical services to an insured.  *See GVB MD v. Aetna Health Inc.*, 2019 WL 6130825, at *6 (S.D. Fla. 2019).  Even if it did, both Eleventh Circuit and Florida Supreme Court case law make clear that

---

[2] In response to the United Defendants' counsel producing to Plaintiff a copy of the patient-member ID card dated 2019, Plaintiff produced the member ID card upon which its allegations and claims are premised.  *See* **Exhibit A**.  That card may properly be considered by this Court in ruling on the Motion to Dismiss because it is central to, and referenced in, Plaintiff's Complaint.  *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1368-69 (11th Cir. 1997).

a "*direct* benefit must be conferred on the defendant to state an unjust enrichment claim under Florida law." *Id.* at *7 (emphasis in original). Cases on which Plaintiff relies, apply this same principle: in *Nordt v. Colina Insurance Limited*, for example, the court concluded that the plaintiff "failed to show how providing medical services to [defendant's] insureds conferred a direct benefit on [defendant insurer]." 2018 WL 2688793 at *3-4 (S.D. Fla. Apr. 13, 2018). Plaintiff likewise pleads, "at best," only an indirect benefit, which is not enough to state a claim for unjust enrichment. *Id.*

Further, the cases cited by Plaintiff provide no support for its failure to allege sufficient facts showing that it conferred a direct benefit on the United Defendants. For instance, none of these cases explain "how providing medical services to [a defendant's] insured confer[s] a direct benefit on [the defendant insurer]," *Nordt v. Colina Ins. Ltd.*, 2018 WL 2688793, at *3-4 (S.D. Fla. Apr. 13, 2018), or stated differently, why the services are not "indirect at best" or "attenuated," *id.*; *Adventist Health*, 2004 WL 6225293, at *6. On this issue, the *Adventist Health* court explained, "as a matter of commonsense, the benefits of healthcare treatment flow to patients, not insurance companies." 2004 WL 6225293, at *6.[3] Additionally, although this Court in *ELAP Services* concluded that the plaintiff sufficiently alleged an unjust enrichment claim against the administrators, here Plaintiff has not alleged similar facts to show that the United Defendants directly benefited from Plaintiff providing elective surgery in some instances and emergency department care in other instances on the patient in question.

### C.     Promissory Estoppel (Count IV)

Plaintiff argues that its promissory estoppel claim is sufficiently alleged because it has generally alleged that it obtained pre-authorizations for the first, third and fifth surgeries, the United Defendants represented on the member ID card that they recognize shared savings programs like TRPN, and that these actions constituted a promise to pay by the United Defendants at the specific TRPN shared saving rates. Plaintiff though ignores that its conclusory general allegations are legally insufficient because a promissory estoppel cause of action sounds in fraud and is therefore subject to the pleading requirements under Fed. R. Civ. P. 9(b). *See*

---

[3] *See, e.g.*, *Baycare Health Sys., Inc. v. Med. Sav. Ins. Co.*, 2008 WL 792061, at *9-10 (M.D. Fla. Mar. 25, 2008) (acknowledging disagreement on the issue within the Middle District of Florida and expressing "skeptic[ism]" about Baycare's claim); *Reva, Inc. v. Humana Health Benefit Plan of La., Inc.*, 2018 WL 1701969, at *3 (S.D. Fla. Mar. 19, 2018) (same).

*Peacock*, 2015 WL 5118122, at *4; *MeterLogic, Inc. v. Copier Solutions, Inc.*, 126 F. Supp. 2d 1346, 1360 n.10 (S.D. Fla. 2000) (applying Rule 9(b) to a claim for promissory estoppel).

At a minimum, Rule 9(b) requires Plaintiff to plead the specific statements that give rise to promissory estoppel claims with particularity, so that the United Defendants are provided with sufficient notice of the "precise misconduct with which [it is] charged." *Id.* Rule 9(b) requires a plaintiff to plead the following:

> (1) precisely what statements or omissions were made in which documents or oral representations; (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) them; (3) the content of such statements and the manner in which they misled the plaintiff; and (4) what the defendant obtained as a consequence of the fraud.

*Peacock*, 2015 WL 5118122, at *4. Plaintiff's general conclusory allegations are insufficient as a matter of law because they are deliberately vague and fail to provide even the most rudimentary detail. Again, the referenced member ID card makes no mention of TRPN or its rates and it otherwise would be unreasonable to deduce from the card's reference to shared savings that the United Defendants intended to convey promises concerning shared savings networks beyond the sole network appearing on the face of the card: First Health. [*See* **Ex. A.**] *See also Berry*, 172 F. App'x at 932 (11th Cir. 2006). Further, Plaintiff cites *Baptist Hospital of Miami, Inc. v. Medica Healthcare Plans, Inc.*, 385 F. Supp. 3d 1289 (S.D. Fla. 2019), to support its promissory estoppel claim; however, *Baptist Hospital* is inapplicable because the plaintiff provider was an in-network facility, the dispute was over the hospital participation agreement and the promissory estoppel claim was pled in the alternative to the breach of contract claims. Because Plaintiff's arguments in its Response are unavailing and its cited authority is not applicable, Plaintiff's cause of action for promissory estoppel must be dismissed.

Dated: February 25, 2021

Respectfully submitted,

**AKERMAN LLP**
Three Brickell City Centre
98 Southeast Seventh Street, Ste. 1100
Miami, Florida  33131
Telephone:  (305) 374-5600

By: /s/ *Gera R. Peoples, Esq.*
    **Gera R. Peoples, Esq. (FBN 450022)**
    gera.peoples@akerman.com
    magda.cabra@akerman.com
    **Ta'Ronce Stowes, Esq. (FBN 107421)**
    taronce.stowes@akerman.com
    magda.cabra@akerman.com

and

**Irene Bassel Frick, Esq. (FBN 158739)**
irene.bassel@akerman.com
nicole.emmett@akerman.com
**AKERMAN LLP**
401 East Jackson Street, Suite 1700
Tampa, Florida 33602
Telephone:  (813) 223-7333

*Counsel for Defendants
UnitedHealth Group Incorporated and
United HealthCare Services, Inc.*

10